UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                  |   |                              |
|----------------------------------|---|------------------------------|
| UMC DEVELOPMENT, LLC and         | : |                              |
| JACKSOPHIE GSCH, LLC,            | : |                              |
|                                  | : |                              |
| Plaintiffs,                      | : |                              |
|                                  | : |                              |
| v.                               | : | Civil Action No. 13-899 (GK) |
|                                  | : |                              |
| DISTRICT OF COLUMBIA, et al.,    | : |                              |
|                                  | : |                              |
| Defendants.                      | : |                              |

## MEMORANDUM OPINION

Plaintiffs UMC Development, LLC ("UMC") and Jacksophie GSCH, LLC ("Jacksophie") (collectively, "Plaintiffs") bring this action against the District of Columbia and its Mayor, Vincent Gray (collectively, the "District Defendants"), Specialty Hospital of Washington-GSE Holdings, LLC ("SHW-GSE"), CMC Realty, LLC ("CMC"), and Not-for-Profit-Hospital, Corporation ("NFPHC") (collectively, "Defendants") for wrongful foreclosure, breach of contract, and related claims.

This matter is before the Court on Plaintiffs' Motion to Remand the case to the District of Columbia Superior Court [Dkt. No. 6]. Upon consideration of the Motion, the District Defendants' Opposition [Dkt. No. 7], Plaintiffs' Reply [Dkt. No. 8], NFPHC's Notice of Consent to Accept Service of Process [Dkt. No. 10], the District Defendants' Sur-Reply [Dkt. No. 13], Plaintiffs' Response to Docket Nos. 10, 11, and 13 and in

Support of Plaintiffs' Motion to Remand [Dkt. No. 15], Plaintiffs' Evidentiary Objections to Docket No. 11-1 [Dkt. No. 14], NFPHC's Opposition to Plaintiffs' Motion to Remand [Dkt. No. 20], and NFPHC's Notice of Joinder in Removal [Dkt. No. 24], and the entire record herein, and for the reasons set forth below, the Motion to Remand is **granted** as to Plaintiffs' District of Columbia claims and **denied** as to Plaintiffs' federal claims.

## I.  BACKGROUND[1]

This action arises out of a 2007 public-private development project between the District, Specialty Hospitals of America, LLC ("SHA"), and various SHA entities, which was aimed at rescuing the District's Greater Southeast Community Hospital ("Hospital") from financial insolvency. Compl. ¶¶ 1, 16, 17. As part of this undertaking, the District entered into a limited partnership agreement with Defendant SHW-GSE, a subsidiary of SHA, pursuant to which the District invested $49 million for the purpose of refinancing the Hospital and redeveloping its surrounding property. Compl. ¶¶ 20-25. Another SHA subsidiary, Defendant CMC, was created to own and manage the real property containing and surrounding the Hospital. Compl. ¶ 13. SHW-GSE

---

[1] The facts and procedural background are taken from the Complaint ("Compl.") [Dkt. No. 1-1] and the undisputed facts set forth in the parties' submissions.

and CMC then entered into a joint venture with Plaintiff Jacksophie through which Plaintiff UMC was to acquire some of the land surrounding the Hospital from CMC, along with related development rights. Compl. ¶¶ 29, 30, 32.

Despite the infusion of more than $50 million of public funds into the refinancing and redevelopment project, the Hospital's financial condition continued to deteriorate. Compl. ¶¶ 46-59. In 2010, the District declared the parent developer in default of various loan agreements, and foreclosed on the land containing and surrounding the Hospital, including the lots to be acquired by UMC. Compl. ¶¶ 60-71. Defendant CMC sued the District to prevent foreclosure, but dropped its case in 2011 after settling with the District. Compl. ¶¶ 69, 73; see CMC Realty, LLC v. Dist. of Columbia, No. 2010 CA 004571 (D.C. Super. Ct.) (the "Foreclosure Action").

On May 31, 2013, Plaintiffs filed this action in the Superior Court for the District of Columbia bringing claims for, inter alia, wrongful foreclosure, breach of contract, specific performance, restitution, unjust enrichment, breach of fiduciary duty, tortious interference with prospective economic advantage, and violations of the Due Process Clause and the Takings Clause of the Fifth Amendment. See Compl. ¶¶ 76-147.

On June 14, 2013, the District Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446. See Notice of Removal, ¶¶ 2-3 [Dkt. No. 1].[2] The Notice of Removal stated that Defendant NFPHC consented to removal, id. at 1, but did not indicate whether Defendants SHW-GSE and CMC also consented.

On July 12, 2013, Plaintiffs moved to remand the case to Superior Court, arguing that the District Defendants' removal was procedurally defective because they had not obtained SHW-GSE's and CMC's timely consent to removal. [Dkt. No. 6]. On July 26, 2013, the District Defendants filed an Opposition to the Motion ("Dist. Defs.' Opp'n") [Dkt. No. 7]. On July 30, 2013, Plaintiffs filed a Reply ("Pls.' Reply") [Dkt. No. 8]. On August 5, 2013, the District Defendants filed a Sur-Reply ("Dist. Defs.' Sur-Reply") [Dkt. No. 13].

Separately, on August 2, 2013, NFPHC, who had not previously appeared in the action, filed an appearance along with a Notice of Consent to Accept Service of Process Rendering Plaintiffs' Motion to Remand Moot ("NFPHC's Notice") [Dkt. No.

---

[2] The District Defendants' Notice of Removal mis-cites 28 U.S.C. § 1441(b) as the basis for removal, apparently based on the version of that provision in existence prior to December 7, 2011. See Dist. Defs.' Notice of Removal ¶ 3. There is no dispute, however, that removal is premised on the Court's federal question jurisdiction, rather than diversity jurisdiction. See Dist. Defs.' Opp'n at 5-6; Pls.' Reply at 2.

-4-

10]. NFPHC's Notice indicated that it also sought removal of the action, and contended, therefore, that even if the District Defendants' removal was procedurally defective, its own timely removal rendered the basis of Plaintiffs' Motion to Remand moot. NFPHC's Notice was accompanied by the written consent to removal of all Defendants. [Dkt. No. 10-1]. On August 9, 2013, Plaintiffs filed a Response to NFPHC's Notice and the District Defendants' Sur-Reply ("Pls.' Sur-Sur-Reply") [Dkt. No. 15] and a Notice of Evidentiary Objections to the exhibit to the District Defendants' Sur-Reply [Dkt. No. 14]. On August 15, 2013, NFPHC filed an Opposition to Plaintiffs' Motion to Remand ("NFPHC's Opp'n") [Dkt. No. 20]. Plaintiffs did not file a further response.[3]

## II. STANDARD OF REVIEW

Under the federal removal statute "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where

---

[3] On August 28, 2013, NFPHC also filed a Notice of Joinder in Removal Petition Filed by [the District Defendants] or, Alternatively, Removal by [NFPHC] [Dkt. No. 24]. This submission appears to have been filed for the purpose of formally declaring NFPHC's intent to remove the action, although its August 2 Notice [Dkt. No. 10] also conveyed that intent.

such action is pending." 28 U.S.C. § 1441(a). Where the case stated by the plaintiff's initial complaint is removable, a defendant must file its notice of removal within 30 days of the time it is formally served with the summons and the complaint. See 28 U.S.C. § 1446(b)(1); Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48 (1999).

Where, as here, an action has been removed solely pursuant to 28 U.S.C. § 1441(a), "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Courts in this District have construed this provision to require that each defendant consent to removal within 30 days of the time that defendant is served. See Ballard v. Dist. of Columbia, 813 F. Supp. 2d 34, 38 (D.D.C. 2011) (citing cases); see also 28 U.S.C. § 1446(b)(2)(B).

If a defendant's notice of removal is procedurally defective, a plaintiff may, within 30 days of such removal, move the court to remand the case back to state court. See 28 U.S.C. § 1447(c). Because federal courts are courts of limited jurisdiction, the removal provisions are strictly construed, and any doubts about removal should be resolved in favor of remand. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 104-09 (1941); Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996).

## III. ANALYSIS

Plaintiffs' primary contention is that the District Defendants' Notice of Removal was defective because it was not accompanied by the timely consent of SHW-GSE and CMC. See Pls.' Mem. at 2-5. The District Defendants argue that they were not required to obtain the consent of SHW-GSE and CMC because SHW-GSE and CMC had not yet been served when the case was removed. Dist. Defs.' Opp'n at 2-4.

Although the parties spend the better part of their papers debating these points, the Court need not reach them. Section 1446(b) provides that "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, <u>any earlier-served defendant may consent to the removal even though that earlier served defendant did not previously initiate or consent to removal</u>." 28 U.S.C. § 1446(b)(2)(C) (emphasis added). As discussed, NFPHC's August 2 Notice conveyed its independent intent to remove the case with the consent of all Defendants. See NFPHC's Notice & Exhibit B (emails dated August 1, 2013) [Dkt. Nos. 10, 10-1]. Accordingly, NFPHC's removal renders any defect in the District Defendants' removal moot, so long as it was timely.

## A. NFPHC's Removal Was Timely

Plaintiffs contend that NFPHC's removal was not timely because it was filed more than 30 days after Plaintiffs purportedly served NFPHC by mailing a copy of the summons, Complaint and initial order to the Mayor and the District of Columbia Office of the Attorney General. Pls.' Sur-Sur-Reply at 6.

In response, NFPHC points out that Plaintiffs' counsel's own affidavit establishes that she never attempted to serve NFPHC through the Mayor and the Attorney General, but instead endeavored to effect service through the District of Columbia's Superintendent of Corporations. NFPHC's Opp'n at 5-6; see also Affidavit of Heather H. Martin ¶ 4 [Dkt. No. 8-1]. NDPHC also maintains that it would make no difference if Plaintiffs had served NFPHC through the Mayor and Attorney General because NFPHC could not be served through those offices; instead, it was required to be served through its chief executive officer pursuant to Rule 4(j)(2) of the D.C. Superior Court Rules of Civil Procedure. NFPHC's Opp'n at 2-4. Accordingly, NFPHC contends that it was not properly served, and the 30-day time period for removal not triggered, until its counsel consented to accept service on July 30, 2013. Id. at 2-3. The Court agrees.

The Supreme Court has held that the 30-day period for removal under 28 U.S.C. § 1446(b) does not run until a defendant is brought under the court's authority by formal service of process (or waiver of such service). See Murphy Bros., Inc., 526 U.S. at 347-48. This is true even if the defendant knows about the suit earlier and has obtained a copy of the complaint. Id. at 348; see also Quality Loan Serv. Corp. v. 24702 Pallas Way, Mission Viejo, CA 92691, 635 F.3d 1128, 1133 (9th Cir. 2011) ("[A]ctual notice of the action is insufficient [to trigger the 30-day removal period]; rather, the defendant must be 'notified of the action, and brought under a court's authority, by formal process,' before the removal period begins to run.") (citation omitted).

District of Columbia law controls as to when effective service occurred. See City of Clarksdale v. BellSouth Telecomm., Inc., 428 F.3d 206, 210 n.6 (5th Cir. 2005) (explaining that a court "look[s] to state law to verify that service of process effectively brought the defendant within the state court's jurisdiction") (citing Lambert Run Coal Co. v. Baltimore & Ohio R.R., 258 U.S. 377, 382 (1922)). The parties agree that D.C. Superior Court Civil Rule 4(j) governs service on NFPHC because it is an "instrumentality" of the District of

Columbia. See Pls.' Sur-Sur-Reply at 6 [Dkt. No. 15]; NFPHC's Opp'n at 2-4.

The parties disagree, however, as to whether subsection 1 or 2 of Rule 4(j) applies. Plaintiffs argue that the Court should apply Rule 4(j)(1), which governs service on the District of Columbia and its officers and agencies, and requires delivery of the summons, complaint, and initial order to the offices of the Mayor and Corporation Counsel, and, if applicable, the officer or agency at issue. See D.C. Super. Ct. Civ. R. 4(j)(1). NFPHC maintains, on the other hand, that the Court should apply Rule 4(j)(2), which governs service on any "state, municipal corporation, or other governmental organization subject to suit," and requires delivery of the summons, complaint, and initial order to the entity's chief executive officer. See D.C. Super. Ct. Civ. R. 4(j)(2).[4]

The Council of the District of Columbia created NFPHC as "an instrumentality of the District" with a "separate legal existence within the District government," and the power to sue and be sued in its own corporate name. See D.C. Code §§ 44-951.02, 44-951.06. By contrast, the D.C. Court of Appeals has

---

[4] As an alternative, Rule 4(j)(2) also permits service in the manner prescribed by the State to which the entity belongs, but since, as discussed below, NFPHC is an entity of the District of Columbia, there is no relevant alternative in this case.

"consistently found" that agencies and noncorporate departments within the District of Columbia government generally cannot be sued in their own name. See D.C. Metro. Police Dep't v. Fraternal Order of Police/Metro. Police Dep't Labor Comm., 997 A.2d 65, 74 (D.C. 2010) (observing that a "noncorporate department within the District government" is presumptively not a "separate suable entity") (citations and quotation marks omitted). Accordingly, NFPHC is not an "agency" of the District of Columbia subject to service under Rule 4(j)(1), but is an "other governmental organization," which is subject to service under Rule 4(j)(2).

Plaintiffs argue that Rule 4(j)(2) does not apply because it "mirrors" an analogous provision in the Federal Rules of Civil Procedure, and since the federal provision does not apply to instrumentalities of the United States, the D.C. provision does not apply to instrumentalities of the District of Columbia. Pls.' Sur-Sur-Reply at 7. Plaintiffs ignore the fact that the federal rule applies to "<u>other state-created</u> governmental organization[s]" whereas the D.C. rule applies to "<u>other</u> governmental organization[s]." Compare Fed. R. Civ. P. 4(j) with D.C. Super. Ct. Civ. R. 4(j)(2) (emphases added). Because the federal rule explicitly narrows its application to "state-created" instrumentalities, whereas the D.C. rule does not and

because state law must be looked to for the purpose of verifying that service of process effectively brought the defendant within the state court jurisdiction, the two provisions need not operate in precisely the same manner.

In any event, the debate between Rule 4(j)(1) and (2) is academic because Plaintiffs failed to satisfy either provision when they sent NFPHC's summons to the District of Columbia's Superintendent of Corporations rather than to the Mayor and the Corporation Counsel, or to NFPHC's chief executive officer. See Affidavit of Heather Martin ¶ 4 [Dkt. No. 8-1].[5] Accordingly, NFPHC was not properly served until its counsel consented to accept service on July 30, 2013.

NFPHC filed its notice of removal on August 2, well within thirty days of July 30. [Dkt. Nos. 10, 10-1]. Therefore, its removal was timely, and there is no justification for remanding the case because of any defect in the removal procedure.

---

[5] Plaintiffs did serve the Mayor and the District of Columbia as defendants in this case, but such service could not achieve jurisdiction over NFPHC because separate service is required for each defendant. See, e.g., Manago v. Dist. of Columbia, 934 A.2d 925, 926 (D.C. 2007) (noting a plaintiff's "obligation to timely serve each defendant with a summons and a copy of the complaint") (emphasis added) (citing Super. Ct. Civ. R. 4(c), (e), (j), (l), and (m)).

## B. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' D.C. Claims

Plaintiffs also ask the Court to exercise its discretion under 28 U.S.C. § 1367(c) to remand their D.C. law claims to the Superior Court. Pls.' Mem. at 9-10. In support of this request, Plaintiffs maintain that their D.C. claims substantially predominate over their federal claims, and that, under the doctrine of constitutional avoidance, their federal claims need not be reached if they prevail on their D.C. claims. Id. at 9-10. In addition, Plaintiffs argue that judicial economy favors remanding their D.C. claims to Superior Court because the "D.C. Superior Court is right now adjudicating closely related claims in a parallel suit, Capital Behavioral Health, LLC v. Dist. of Columbia, 2011 CA 009881 B (D.C. Super. Ct.)." Id. at 10; see also Pls.' Reply at 5.

Defendants oppose remand of the D.C. claims, but they have not addressed Plaintiffs' contention that such claims predominate over the federal claims. Instead, they argue that the Court is compelled to exercise jurisdiction because "section 1367(a) authorizes a district court to exercise its supplemental jurisdiction in mandatory language." Dist. Defs.' Opp'n at 5 (emphasis added by District Defendants) (citing Lindsay v. Gov't

Employees Ins. Co., 448 F.3d 416, 421 (D.C. Cir. 2006)); see also NFPHC's Opp'n at 7-8.

There is no dispute that the Court has original jurisdiction over Plaintiffs' constitutional law claims, and the authority to exercise supplemental jurisdiction over the D.C. claims, which arise out of the same series of transactions as the constitutional claims. See Pls.' Reply at 2, 5; 28 U.S.C. §§ 1331, 1367(a). Defendants are correct that our Court of Appeals has held that where, as here, supplemental jurisdiction is authorized under 28 U.S.C. § 1367, a district court cannot decline to exercise it unless there is a specific basis for doing so under the supplemental jurisdiction statute. Lindsay, 448 F.3d at 421, 424.

However, section 1367(c) expressly grants district courts the discretion to decline to exercise supplemental jurisdiction over a claim where: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons

for declining jurisdiction." 28 U.S.C. § 1367(c).[6] Our Court of Appeals has recognized that these exceptions render supplemental jurisdiction

> a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

Women Prisoners of D.C. Dep't of Corr. v. Dist. of Columbia, 93 F.3d 910, 920 (D.C. Cir. 1996) (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966)) (quotation marks omitted).

Two statutory grounds for declining supplemental jurisdiction support Plaintiffs' position. First, Plaintiffs' D.C. claims are four times as numerous as their federal claims, and provide a far broader basis for relief. The D.C. claims present contract, property, tort, fiduciary duty, and equitable theories, whereas the two federal claims invoke relatively narrow grounds for relief under the Fifth Amendment. Further, Plaintiffs are correct that, under the doctrine of constitutional avoidance, success on their D.C. claims may

---

[6] The term "State" in Section 1367(c) includes the District of Columbia. 28 U.S.C. § 1367(e).

negate the need to reach the constitutional claims at all. See Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.") (citation omitted).

Second, Plaintiffs' D.C. claims raise novel and complex issues of D.C. law. As already discussed, NFPHC, which was created by the District to acquire and operate the Hospital's assets after foreclosure, is a special governmental instrumentality with its own authorizing legislation under the D.C. Code. See D.C. Code § 44-951.01, et seq. Similarly, the public-private partnership between the District of Columbia and SHA to revive the ailing Hospital derives from specific District of Columbia legislation, namely, the "East of the River Hospital Revitalization Emergency Amendment Act of 2007," Compl. ¶ 19, and specific quasi-public, quasi-private transactions authorized pursuant to such legislation. There is little case law addressing the unique character of these entities and transactions, and therefore, resolving Plaintiffs' claims would inevitably require this Court to venture into uncharted legal territory, with potentially significant consequences.

For example, the District Defendants have already moved to dismiss all of the claims against them on grounds of sovereign immunity. See Dist. Defs.' Mot. to Dismiss All Claims in the Complaint Against Them at 13-22 [Dkt. No. 17]. Whether the District Defendants are immune from tort liability in this case turns on whether their actions involved "the permissible exercise of policy judgment[,]" a question the D.C. Court of Appeals has acknowledged "is not always an easy task" to answer. Aguehounde v. Dist. of Columbia, 666 A.2d 443, 447-48 (D.C. 1995). The answer turns solely on D.C. law. See e.g., Owen v. City of Independence, 445 U.S. 622, 649 (1980) (discussing the traditional "rationale underlying the common-law immunity for 'discretionary' functions" of municipalities) (emphasis added); Aguehounde, 666 A.2d at 447 ("Under the common law, a municipality is immune from suit for decisions made pursuant to the exercise of discretion, but not for actions which are ministerial.") (emphasis added; citations omitted).

Because the D.C. courts have not yet interpreted the statutory and contractual authority creating the East of the River Hospital Revitalization Project, this Court would have little to guide it in determining whether the District's decision to foreclose on the land surrounding the Hospital was a permissible exercise of policy judgment. Accordingly, such an

-17-

issue is more appropriately addressed by the District of Columbia courts. See Women Prisoners of D.C. Dep't of Corr., 93 F.3d at 922 ("The Supreme Court has counseled that 'the proper function of [a] federal court is to ascertain what the state law is, not what it ought to be,' and we have observed that 'a federal court should be reluctant to retain pendent jurisdiction over a question for which state jurisprudence gives inadequate guidance.'") (citations and quotation marks omitted).

Separately, determining whether Plaintiffs are entitled to equitable relief in the event that the legal remedies they seek are denied, will involve a nuanced balancing of public and private interests. As with the question of immunity, there is no direct guidance from the District of Columbia courts as to how this Court should weigh the public and private interests in this case, a consideration that favors remand. Cf. id. at 921-22 (agreeing "that the novelty of appellees' request for equitable relief . . . precluded the exercise of supplemental jurisdiction").

The District of Columbia courts are better equipped to address Plaintiffs' D.C. claims, not only because they present novel and complex legal issues, but also because they implicate distinctly local policy interests, and may affect the District's ability to enter into similar public-private ventures in the

future. See id. at 923 ("'In general, principles of comity and the desirability of surer-footed reading of applicable law support the determination of state claims in state court. . . Moreover, the district court should not retain jurisdiction because this case directly implicates the processes by which a locality governs itself.'") (emphasis in original) (quoting Grano v. Barry, 733 F.2d 164, 169 (D.C. Cir. 1984)).

Further, although it is not an express consideration under 28 U.S.C. § 1367(c), the Court notes that judicial economy will be served by remanding the state claims to Superior Court because that court is presently presiding over a related case, and has presided over several related cases, including the Foreclosure Action. See CBH v. Dist. of Columbia, 2011 CA 9880 (D.C. Super. Ct.); CMC Realty, LLC v. Fenty, 2010 CA 004571 B (D.C. Super. Ct.); UMC Development, LLC v. Specialty Hosp. of Washington-GSE Holdings, LLC, 2009 CA 9233 (D.C. Super. Ct.).

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs D.C. claims pursuant to 28 U.S.C. § 1367(c)(1) and (2). Such claims shall be severed from this case and remanded to the Superior Court for resolution. The remaining Constitutional claims shall be **dismissed without prejudice**.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is **granted in part.** An Order shall accompany this Memorandum Opinion.

October 8, 2013        /s/
                       ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                       Gladys Kessler
                       United States District Judge

**Copies to: attorneys on record via ECF**