UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UMC DEVELOPMENT, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | Civil Action No. 13-899 (GK) |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |
| | ) | |

<u>**DEFENDANTS DISTRICT OF COLUMBIA'S AND MAYOR MURIEL BOWSER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND IN SUPPORT OF THIER MOTION TO DISMISS**</u>

September 29, 2015

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Acting Deputy Attorney General
Public Interest Division

*/s/ Toni Michelle Jackson*
TONI MICHELLE JACKSON, Bar Number 453765
Chief, Equity Section

*/s/   Thomas L. Koger*
THOMAS L. KOGER, D.C. Bar No. 427921
Senior Assistant Attorney General
Office of the Attorney General for the District of Columbia
441 Fourth Street, N.W., Suite 630 South
Washington, D.C.  20001
Tel: (202) 727-4170
Fax: (202) 715-7725
Email: thomas.koger@dc.gov

*Counsel for Defendants District of Columbia and Mayor Muriel Bowser, sued solely in her official capacity*

# TABLE OF CONTENTS

I.    Statement of the Case.................................................................................................. 6

    A.    The District Attempts to Save the Only Hospital in the District of Columbia East of the Anacostia River.................................................................................................. 7

    B.    Plaintiffs' Dealings with SHA, CMC, and CMC Realty.................................. 8

    C.    The Foreclosure, and Post-Foreclosure Events ............................................. 10

    D.    Litigation of Plaintiffs' Claims in the District of Columbia Courts.............. 10

II.    Standards of Review .................................................................................................. 12

    A.    Federal Rule Of Civil Procedure Rule 15 ...................................................... 12

    B.    Rule 12(b)(1).................................................................................................. 13

    C.    Rule 12(b)(6).................................................................................................. 14

III.    Plaintiffs Lack Standing To Challenge The Foreclosure or To Proceed Against The District .......................................................................................................................... 15

    A.    Plaintiffs Do Not Allege An Actual, Particularized Concrete Injury-In-Fact................ 17

        1.    No Ownership Interest Ever Materialized ................................................. 17

        2.    Plaintiffs' Development Land-Based Revenues and Investments Do Not Establish Standing ..................................................................................... 21

    B.    Plaintiffs Cannot Establish Traceability........................................................ 24

    C.    Plaintiffs Cannot Demonstrate Redressibility ............................................... 26

IV.    The Court Lacks Jurisdiction Over Any Challenge to the Foreclosure or the District's Refusal to Approve Transfer of Land to Plaintiffs Under the Doctrine of Sovereign Immunity.................................................................................................................... 28

    A.    The District Exercised Its Unfettered Discretion in Not to Approving the Transfer of the Development Land to UMC Development ................................................. 30

    B.    The District Acted Within the Discretion Provided It By the Partnership Agreement, Deed of Trust, and the Acquisition Loan Agreement in Conducting the Foreclosure and Post-Foreclosure Sale of Assets.................................................................. 31

V.    The Rooker-Feldman Doctrine Precludes Relief Based On An Alleged Ownership Interest Injury....................................................................................................................... 32

VI.    The Court Should Again Decline To Exercise Supplemental Jurisdiction Over Plaintiffs' District Law Claims, Which Predominate Over Their Federal Claims And Raise Novel And Complex Issues Of D.C. Law ....................................................................... 33

VII. Plaintiffs' Claims Are Time-Barred Because This Court's Dismissal of the Federal Claims and the D.C. Superior Court's Dismissal of the Non-Federal Claims Eliminated the Tolling of Their Statutes of Limitations Previously Triggered by the Commencement of Plaintiffs' Suit in D.C. Superior Court....................................................................................... 34

VIII. Plaintiffs' Non-Federal Claims Seeking Unliquidated Damages Are Barred By Developers' Non-Compliance With the Mandatory Notice Requirements of D.C. Official Code § 12-309 37

IX. Plaintiffs' Claims Against the District Fail to State a Cause of Action for Which Relief Can Be Granted ..................................................................................................... 39

    A.    Plaintiffs Have Not Stated A Claim Against the District for a Violation of Their Procedural or Substantive Due Process Rights (Count I) ............................................. 40

        1.    Procedural Due Process ............................................................................. 40

        2.    Substantive Due Process............................................................................ 43

    B.    Plaintiffs Have Failed to State a Takings Claim Because They Had No Property Interest in the Development Land and the District Enforced Its Rights Against CMC and CMC Realty Under the Loan Documents Through te Foreclosure (Count II) ........................ 46

        1.    Plaintiffs Cannot State A Takings Claim Absent An Existing Property Interest ....... 48

        2.    The Foreclosure Was Not A "Taking"......................................................... 48

        3.    The Foreclosure Was Certainly Not A Regulatory Taking .......................... 50

    C.    The Plaintiffs' Wrongful Foreclosure Claim Based on Legal Conclusions Is Defeated by Rulings of the D.C. Superior Court (Count III) ....................................... 51

    D.    Plaintiffs Have Failed To Allege Facts That, If True, Would Entitle Them To the Equitable Relief of Specific Performance of the Operating Agreement (Count II) or a Constructive Trust (Count IX) ............................................................................... 54

        1.    Plaintiffs Cannot Seek Equitable Relief While Simultaneously Claiming They Are Entitled To Fully Adequate Remedies At Law...................................................... 54

        2.    The District May Not Be Subject to Orders Directing the Conveyance Of District Real Estate for the Benefit Of Private Litigants ....................................................... 57

        3.    Plaintiff Is Not Entitled to Specific Performance of a Contract It Was Not Ready, Willing, and Able to Perform................................................................................. 58

    E.    The Foreclosure Did Not Interfere, Tortiously or Otherwise, With Plaintiffs' Prospective Business Advantage (Count III) ................................................................ 59

    F.    Plaintiffs Have Not Stated a Claim for Breach of Contract (Count IV) ........................ 61

    G.    Any Unjust Enrichment (Count VII) And/Or *Quantum Meruit* (Count X) Claims Are Timed-Barred............................................................................................. 63

# TABLE OF AUTHORITIES

**Cases**

*Aguehounde v. District of Columbia,* 666 A.2d 443, 447 (D.C. 1995) ........................ 24

*Allen v. Wright,* 468 U.S. 737, 753 n. 19 (1984) ......................................................... 22

*Alpine Cnty., California v. United States,* 417 F.3d 1366, 1368 (Fed. Cir. 2005)........................ 56

*Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972) ........................................ 15

*Bear Dev., LLC v. City of Kenosha,* 822 F.Supp.2d 865, 873 (E.D. Wis. 2011)......................... 53

*Beatty v. Wash. Metropolitan Area Transit Auth.,* 860 F.2d 1117, 1127 (D.C. Cir. 1988) .......... 24

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ..................................................... 9, 34

*Bennett Enters., Inc. v. Domino's Pizza, Inc.,* 45 F.3d 493, 499 (D.C. Cir. 1995)....................... 54

*Berkovitz v. United States,* 486 U.S. 531, 537 (1988) ............................................................ 25

*Bowen v. Pub. Agencies Opposed to Social Sec. Entrapment,* 477 U.S. 41, 55-56 (1986) .......... 43

*Brown v. Legal Found. of Washington,* 538 U.S. 216, 233 (2003)............................................. 42

*Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002) ........................................................ 9

*Browning v. Clinton,* 292 F.3d 235, 243 (D.C. Cir. 2002) ...................................................... 54

*Capitol Medical Center, LLC and CMC Realty, LLC, v. Adrian Fenty, Mayor,* 2010 CA 004571 5

*Castle Rock* .............................................................................................................. 35

*Chandler v. District of Columbia,* 404 A.2d 964, 966 (D.C. 1979) ........................................... 24

*Chavin v. H.H. Rosin & Co.,* 246 A.2d 921, 922 (Del.1968).") .................................................. 49

*City of Cuyahoga Falls v. Buckeye Community Hope Found.,* 538 U.S. 188 (2003).................... 39

*Columbia Brick, Co. v. Dist. of Columbia,* 1 App. D.C. 351, 356-57 (1893)................................ 53

*Comm. of United States Citizens Living in Nicar. v. Reagan,* 859 F.2d 929, 943–44 (D.C. Cir. 1988) .............................................................................................................. 39

*County of Sacramento v. Lewis,* 523 U.S. 833 (1998)........................................................ 38, 39

*Ctr. for Law & Educ. v. Dep't of Educ.,* 396 F.3d 1152 (D.C. Cir. 2005) ................................... 22

*Decatur Liquors v. District of Columbia,* 478 F.3d 360 (D.C. Cir. 2007)......................... 39, 41

*Dist. of Columbia v. Wical Ltd. P'ship,* 630 A.2d 174, 184 (D.C.1993)........................ 49, 50

*District Intown Properties L.P. v. District of Columbia,* 198 F.3d 874 (D.C. Cir. 1999).41, 44, 49

*District Intown Properties Ltd. v. P'ship v. District of Columbia,* 23 F.Supp.2d 30, 38 (D.D.C. 1998) ......................................................................................................... 44

*District of Columbia v. Owens-Corning Fiberglass Corporation, et al.,* 572 A.2d 394 (D.C. 1989) ......................................................................................................... 24

*Donohue v. United States,* 870 F.Supp.2d 97, 103 (D.D.C. 2012) .......................................... 8

*Eastern Enterprises v. Apfel,* 524 U.S. 498, 523 (1998)........................................................ 41

*Eastern States Petroleum Corp. v. Rogers,* 280 F.2d 611, 613 (D.C. Cir. 1960) ........................ 49

*Elkins v. District of Columbia,* 690 F.3d 554, 562 (D.C. Cir. 2012).............................. 38, 40

*Ex Parte New York,* 256 U.S. 503, 511, 41 S.Ct. 592, 593, 65 L.Ed. 1063 (1921) ..................... 52

*First English Evangelical Lutheran Church v. Cnty of Los Angeles,* 482 U.S. 304 (1987)...42, 51

*Foggy Bottom Ass'n v. District of Columbia Office of Consumer and Regulatory Affairs,* 441 F.Supp. 2d 84 (D.D.C. 2006) ............................................................................... 43

*Foman v. Davis,* 371 U.S. 178 (1962) ................................................................................ 8

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.,* 944 A.2d 1055 (D.C. 2008) ........... 56

*Freeman v. F.D.I.C.,* 56 F.3d 1394 (D.C. Cir. 1995) ............................................................ 38

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.,* 528 U.S. 167 (U.S. 2000)..................... 11

*George Washington Univ. v. District of Columbia*, 318 F.3d 203 (D.C. Cir. 2003) ................... 38

*Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9 (D.D.C. 2001) ............ 8

*Green v. Stuyvesent*, 505 F. Supp. 2d 176 (D.D.C. 2007) ................................................. 8

*Grunley Constr. v. Dist. of Columbia*, 704 A.2d 288 (D.C. 1997) .......................................... 53

*Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ...................................................... 8

*Hollingsworth v. Perry*, 570 U.S. __, 133 S.Ct. 2652 (2013) .............................................. 10

*IMark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F.Supp.2d 141 (D.D.C. 2010) ...................... 55

*Interbank Funding Corp. Securities Litigation v. Belizan*, 629 F.3d 213 (D.C. Cir. 2010) .......... 8

*Iqbal* ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...9, 13, 34, 47, 50

*Jack's Canoes & Kayaks, LLC v. National Park Service*, 937 F.Supp.2d 18, 26 (D.D.C. 2013).. 9

*Jones v. Flowers*, 547 U.S. 220, 226 (2006)....................................................................... 35

*Kakaes v. George Washington Univ.*, 790 A.2d 581(D.C. 2002)...................................49, 50

*Kawananakoa v. Polyblank,* 205 U.S. 349 (1907)................................................................ 24

*Klein v. New Orleans*, 99 U.S. 149 (1878) ......................................................................... 53

*Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005) ........................................................... 42

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) .................................. 42

*Lozansky v. Obama*, 841 F. Supp. 2d 124 (D.D.C. 2012)...................................................... 10

*Lucas v. South Carolina Costal Council*, 505 U.S. 1003 (1992)............................................. 46

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992),,,,,,,,,,,,,,,,,,,,,,,,,,,,,,··· ·8, 11

*Mallof v. District of Columbia*, 1 A.3d 383 (D.C. 2010)........................................................ 22

*Marshall v. Allison*, 908 F.Supp.2d 186 (D.D.C. 2012) ....................................................... 54

*Marshall v. Dist. of Columbia*, 458 A.2d 28 (D.C.1982) ..................................................... 49

*Mekes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319 (D.C. Cir. 2011)................................. 36

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983) ................................................ 36

*Moore v. Gaither*, 767 A.2d 278 (D.C. 2001)..................................................................... 56

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ..................................... 35

*Nat'l Sec. Counselors*, 2013 WL 1141768 ....................................................................... 47

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004)) ............... 8

*Nealon v. District of Columbia*, 669 A.2d 685 (D.C. 1995).................................................. 24

*Nevada v. Hall*, 440 U.S. 410 (1979) ............................................................................... 24

*Owen v. Independence*, 445 U.S. 622 (1980) ................................................................... 24

*Papasain v. Allain*, 478 U.S. 265 (1986)....................................................................9, 50

*Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)..........................42, 43, 45

*Powell v. District of Columbia*, 602 A.2d 1123 (D.C. 1992) ................................................. 24

*Reilly v. Cullinane*, 53 App.D.C. 17 (D.C. Cir. 1923)........................................................... 54

*Ridgway v. Ridgway*, 454 U.S. 46 (1981)........................................................................ 52

*Robinson v. Deutsche Bank Nat. Trust Co.*, __ F.Supp.2d __, 2013 WL 1191034, at *6 (D.D.C. March 25, 2013)....................................................................................................... 47

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) .......................................................... 51

*Sabre Intern. Sec. v. Torres Advances Enter.*, 820 F.Supp.2d 62 (D.D.C. 2011)......................... 49

*Silverman v. Barry*, 845 F.2d 1072 (D.C. Cir. 1988).......................................................... 39

*Speed v. Mills*, __ F.Supp.2d__, 2013 WL 336770 ........................................................... 44

*Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002)... 43

*Tootle v. Secretary of Navy*, 446 F.3d 167, 174 (D.C. Cir. 2006) .......................................... 11

*Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ................................................ 15

*Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997) .......... 39

*Tsintolas Realty Co. v. Mendez*, 984 A.2d 181 (D.C. 2009)............................................................ 57

*UMC Dev., LLC v. District of Columbia*, --- A.D.3d ---, 2015 WL 4113371  (D.C. July 9, 2015) 7

*United States v. Causby,* 328 U.S. 256 (1946)............................................................................... 45

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010)................................................. 37

*Vemuri v. Napolitano*, 845 F. Supp. 2d 125 (D.D.C. 2012) .......................................................... 10

*Villa Corp. v. S.C.*, 187 F.2d 493 (3rd Cir. 1951).......................................................................... 53

*Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1965) ....................................................... 42

*Wash. Teachers' Union v. Bd. of Educ. of the District of Columbia*, 109 F.3d 774 (D.C. Cir.
    1997) ....................................................................................................................................... 39

*Wissner v. Wissner*, 338 U.S. 655, 659 (1950) ............................................................................. 52

*Wright v. Foreign Serv. Grievance Bd.,* 503 F.Supp.2d 163, 170 (D.D.C. 2007))........................... 9

*Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) ............................................. 39

*Yee v. Escondido*, 503 U.S. 519, 523 (1992) ................................................................................ 42

**Statutes**
D.C. Official Code §12-309........................................................................................................... 8

**DEFENDANTS DISTRICT OF COLUMBIA'S AND MAYOR MURIEL BOWSER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND IN SUPPORT OF THIER MOTION TO DISMISS**

Defendants the District of Columbia and Mayor Muriel Bowser (collectively, the District) respectfully submit this memorandum of points and authorities in opposition to Plaintiffs' UMC Development, LLC's and Jacksophie GSCH, LLC's (collectively, the Developers) Motion For Leave To File Second Amended Complaint (Pl. Mot.) and in support of District Defendants' Motion To Dismiss (DC MTD) because the proposed amendment is futile. Plaintiffs lack standing to pursue any claims asserted in the proposed Second Amended Complaint (SAC). Even if they did not lack standing, as they do, they fail to state any viable claims though the SAC's nine Counts. All are defeated by the District's discretionary function sovereign immunity. Also, if any of the nine Counts states a *prima facie* claim, which they do not, these claims would be time-barred. With the denial of Plaintiffs' motion for leave to amend, the Court should dismiss this case based on the pending First Amended Complaint (FAC) under Fed. R. Civ. P. 12(b)(1) or 12(b)(6).[1] Finally, if any non-federal claims were to survive, as this Court properly decided in its Memorandum Opinion dated October 8, 2013, Dkt 28, it should not exercise supplemental jurisdiction over them.

## I.      STATEMENT OF THE CASE

All of Plaintiffs' claims arise from the District's lawful efforts between October 2007 and July 2010 to maintain the viability of a hospital serving some of the District's neediest residents.

---

[1]  For this reason, this memorandum employs parallel cites to the proposed Second Amended Complaint (SAC) and the FAC, to demonstrate that the Counts in the FAC are no more viable than their SAC counterparts, and should be dismissed.

**A.** <u>**The District Attempts to Save the Only Hospital in the District of Columbia East of the Anacostia River**</u>

In 2007, the District attempted to save the District's only hospital east of the Anacostia River by seeking a healthcare provider capable of running what was then known as the Greater Southeast Community Hospital (GSCH, or Hospital). *See* Dkt No. 62-1 (proposed Second Amended Complaint or SAC) ¶¶ 3, 16; Dkt No. 33 (First Amended Complaint or FAC) ¶¶ 1, 13. The Council of the District of Columbia (Council) enacted the "East of the River Hospital Revitalization Emergency Amendment Act of 2007" (the Act), which would provide $79,000,000[2] in public funding to facilitate the improvement of the Hospital. SAC ¶ 17- 19; FAC ¶ 2. The District then entered into a limited partnership agreement with SHW-GSE, a wholly-owned subsidiary of Specialty Hospitals of America, LLC (SHA), to form a partnership known as Greater Southeast Investments, L.P. (GSI or the Partnership) that would distribute through loans $49,000,000 of the funds made available by the District for the improvement of the hospital. SAC ¶¶ 20-22; FAC ¶¶ 18-20. Under the terms of the Partnership Agreement, General Partner SHW-GSE's authority was not unlimited. *See generally*, Agreement of Limited Partnership of Greater Southeast Investments, L.P., Exh. 1. SHW-GSE could not "cause the Partnership to sell, transfer or otherwise dispose of any property or assets in a single transaction or series of related transactions" without prior written authorization from the District. Exh. 1, Sec. 4.2(n).

Meanwhile, SHA, established Capitol Medical Center, LLC ("CMC") to operate the hospital, and CMC Realty, LLC (CMC Realty) (collectively, the CMCs), to own the real property itself. SAC ¶ 24; FAC ¶ 22. On November 7, 2007, GSI entered into various loan agreements and notes with CMC and CMC Realty (the Notes) funded by the District to enable

---

[2]  As correctly reflected in *UMC Dev., LLC v. District of Columbia,* ---A.D.3d ---, 2015 WL 4113371, at, at *5, *7 (D.C. July 9, 2015) at *1, the District financing provided under the Act totaled $79,000,000.

the CMCs to purchase and operate the hospital. SAC ¶ 25; FAC ¶ 23. The Notes were secured by a Deed of Trust, Security Agreement, Fixture Filing, and Restrictive Covenants (Deed of Trust or DOT (Exh. 2)) running to the limited partnership, GSI. SAC ¶ 27; FAC ¶ 25. The Deed of Trust provided GSI with the right to foreclose on the property in the event that the SHA Entities defaulted under the terms of the Deed of Trust. SAC ¶ 28; FAC ¶ 26. One of the secured agreements, the Acquisition Loan Agreement (Exh. 3), required CMC Realty to obtain written approval from the District before it could convey an interest in the Hospital property and its surrounding real estate. (Exh. 3, Art. 11(a)).[3]

### B. **Plaintiffs' Dealings with SHA, CMC, and CMC Realty**

Two days prior to the execution of the Partnership Agreement, the Notes, and the Deed of Trust, SHW-GSE and CMC Realty entered into an agreement with Plaintiff Jacksophie (Operating Agreement, a copy of which is submitted as Exh. 4). SAC ¶ 30; FAC ¶ 28. Plaintiffs allege that Jacksophie and various SHA entities created UMC Development as a joint venture, in which Jacksophie was to own a 65% interest. *Id.* Plaintiffs anticipated that, under the Operating Agreement, the SHA entities would transfer to UMC Development the real property at 1310 Southern Avenue, S.E., Washington, D.C. and identified as lots 3 and 4 in Square 5919, except for the land upon which the Hospital sat (the Development Land). Exh. 4, ¶ 3 *and* Exhibit B; *see also* SAC ¶¶ 32, 36; FAC ¶ 32. The Operating Agreement expressly recognized that the transfer of the Development Land was subject to the terms of the Acquisition Loan Note. Exh. 4, ¶ 3. The Operating Agreement contemplated that following the transfer of UMC Development would then work to develop the Development Land. Exh. 4, ¶ 3; SAC ¶ 32; FAC ¶ 30.

Plaintiffs assert that they "made significant investments in the Development Land for its intended use and development," SAC ¶ 3; FAC ¶ 3; *see also* FAC ¶¶ 41-42. The investments of resources alleged by Plaintiffs include surveying, *id.* ¶ 34, subdividing, *id.* ¶ 36, putting out Requests for Qualifications for and selecting professionals to assist them in developing the property, *id.* ¶ 40-41, and meeting with the District and consultants about developing the land, *id.* ¶¶ 42-43. Plaintiffs also allege they entered into a lease agreement with GSI, *id.* ¶ 44, a second leasehold with Bio Medical Southeast Applications, *id.* ¶ 45, and almost leased property to CVS, *id.* ¶ 46. Plaintiffs concede, however, that the District did not approve transfer of the Development Land to the Developers. SAC ¶¶ 49-51; FAC ¶ 42. On March 12, and 13, 2008, CMC Realty requested the District's approval to transfer the Development Land to the Developers. SAC ¶¶ 49-50; FAC ¶¶ 38-39. Plaintiffs maintain that the District "request[ed] and obtain[ed] information in connection with the proposed transfer of title in the Development Land from CMC Realty to the Developers, as agreed," but acknowledge that the District never did approve transfer of the Development Land to them. SAC ¶ 51; FAC ¶ 42. Plaintiffs' claims are based on their incorrect assumption that they were the rightful owners of the Development Land (Ownership Interest), SAC, *passim*[4]; FAC, *passim*, and (2) held a right to develop the Development Land (Development Interest), SAC ¶¶ 91, 130, 131. On these bases, Plaintiffs contend they had a property interest in the Development Land.

---

[4] Plaintiffs also alleged in their Complaint remanded by this Court to the Superior Court of the District of Columbia (SC Complaint (Exh. 5)) that they were the "rightful owners" of the Development Land. SC Complaint ¶¶ 3, 4, 38, 62, 91, 138, 139, 141, 150. Judge Weisberg, *see UMC Development, LLC, et al. v. D.C., et al.*, 2013 CA 3789 Order Granting Motion To Dismiss Of Defendants District Of Columbia And Mayor Vincent C. Gray (Trial Ct. Order or Exh. 6), slip op, Jan. 14, 2014, at 4, and the District of Columbia Court of Appeals, *UMC Dev., LLC v. District of Columbia*, ---A.D.3d ---, 2015 WL 4113371, at4113371, at, at *5 (D.C. July 9, 2015) each rejected this contention in holding that the Plaintiffs lacked standing to pursue their claims.

4

### C.  <u>The Foreclosure, and Post-Foreclosure Events</u>

On June 3, 2010, the District filed a Notice of Foreclosure, setting July 9, 2010 as the sale date for UMC. SAC ¶ 67; FAC ¶ 63. On June 18, 2010, CMC and CMC Realty sued the District and moved for a temporary restraining order (TRO) to prevent the announced foreclosure from proceeding. *Capitol Medical Center, LLC and CMC Realty, LLC, v. Adrian Fenty, Mayor,* 2010 CA 004571 B (the Foreclosure Action).[5]

On July 6, 2010, Judge Henry Greene of D.C. Superior Court conducted an evidentiary hearing on CMC and CMC Realty's TRO Motion, ultimately denying the motion. *See* 2010 CA 004571 B Order dated July 6, 2010, (Exh. 7; *see also* excerpt of transcript of July 6, 2010 TRO hearing (Exh. 8, TRO Tr.) at 86:2-18; 126:12-16). Accordingly, on July 9, 2010, the District conducted a foreclosure auction of the assets of CMC and CMC Realty. SAC ¶ 78; FAC ¶ 68. The District was the sole bidder at the foreclosure auction. SAC ¶ 79; FAC ¶ 69. The District proceeded to buy the foreclosed upon assets pursuant to the notice of foreclosure and Deed of Trust. SAC ¶¶ 78-79; FAC ¶ 68.

On April 26, 2011, Judge Burgess of D.C. Superior Court granted the District partial summary judgment on its Counterclaim against CMC and CMC Realty in the Foreclosure Action. *Fenty* PSJ Order, Exh. 9, at 10-14. Judge Burgess held that CMC and CMC Realty had, in fact, defaulted on financial obligations that were subjects of the DOT. *Id.* at 10-14. Plaintiffs did not intervene in the Foreclosure Action or otherwise challenge the foreclosure until filing this lawsuit on May 31, 2013. *See* Dkt 2010 CA 004571 B; Dkt 2013 CA 003789.

### D.  <u>Litigation of Plaintiffs' Claims in the District of Columbia Courts</u>

As the Court is well aware, this matter was removed from the Superior Court of the District of Columbia to this Court on June 14, 2013. By Order dated October 8, 2013, this Court

---

[5] The SAC alleges, at ¶ 77, that *CMC v. Fenty* was commenced on June 13, 2010. Plaintiffs are mistaken.

severed and dismissed Plaintiffs' constitutional claims against the District and remanded their state law claims. Dkt Nos. 27-28. Plaintiffs then moved for clarification or, in the alternative, for partial reconsideration and amendment of this Order. Dkt No. 29. In response, the Court explained that its order dismissing Plaintiffs' federal claims "*prospectively* tolled the statute of limitations on those claims," and declined to hold, as Plaintiffs sought, that its "Order of October 8, 2013 does not otherwise prejudice, in theory or in practice, Plaintiffs' ability to reassert those claims in the future, just as Plaintiffs would be continuing to assert them alongside their claims under D.C. law absent the dismissal without prejudice." Dkt. No. 32 (emphasis added). Plaintiffs filed their FAC on November 4, 2013, Dkt No. 33, and moved on September 8, 2015, for leave to file the SAC, Dkt 62.

Between these filings, on January 14, 2014, Judge Weisberg dismissed every claim against the District in *UMC Development, LLC, et al. v. D.C., et al.*, 2013 CA 3789, the matter that encapsulated the state law claims this Court remanded to D.C. Superior Court. Judge Weisberg held that Plaintiffs lacked an injury in fact because "at the time of the foreclosure, plaintiffs did not own the property or the right to develop it; they had, at most, a conditional future interest in developing the property." Exh. 6 at 4-5. He also found that "[t]o the extent that the foreclosure snuffed out this interest, any resulting injury is 'conjectural or hypothetical' and does not constitute an injury in fact sufficient to confer standing." *Id.* at 5.

Judge Weisberg held that Plaintiffs had not established causation or redressibility, as

> [h]ad the District not foreclosed, plaintiffs would still have no right to develop the property without the consent of the District, and it is apparent that the District did not and does not consent. . . . Even if the Court were to set aside the foreclosure, it would have no authority to order the District to approve the conveyance of the development property from CMC to plaintiffs.

*Id.* at 5-6. Judge Weisberg also held that "it is clear that the District's decision to approve or to withhold approval [for the conveyance of the UMC Real Property] is a discretionary governmental decision, for which the District enjoys immunity from suit." *Id.* at 7. The Court of Appeals "affirm[ed] the Superior Court's order dismissing the developers' [, UMC Development, LLC and Jacksophie GSCH, LLC,] suit in its entirety, but . . . reverse[d] to the extent that the order dismissed the developers' claims with prejudice." *UMC Dev., LLC v. District of Columbia,* --- A.D.3d ---, 2015 WL 4113371, at *8 (D.C. July 9, 2015) As discussed below, Plaintiffs lack of standing to pursue their state-law claims against the District applies equally, and fatally, to their federal claims.

Even if the Developers did not lack standing to pursue the SAC's claims, which they do, all these claims are defeated by the District's sovereign immunity and are time-barred. Further, all non-federal claims seeking damages are defeated by Plaintiffs' non-compliance with D.C. Official Code § 12-309. None may survive a Rule 12(b)(6) motion. Accordingly, Plaintiffs' Motion is futile and should be denied. For these same reasons, upon denial of Plaintiffs' Motion, the FAC also should be dismissed in its entirety.

## II.    STANDARDS OF REVIEW
### A.    <u>Federal Rule Of Civil Procedure Rule 15</u>

Motions for leave to amend a complaint more than 21 days after its service or more than 21 days after a defendant has served a motion under Rule 12(b), as in this case, are governed by Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2)(e) allows plaintiffs to amend their complaint  "only with the opposing party's written consent or the court's leave." Rule 15(a)(2) also states that where, as here consent is withheld, leave to amend should be freely given "when justice so requires." *Id.* The U.S. Supreme Court has explained that courts are to "freely give leave" under Rule 15(a)(2) "[*i*]*n the absence of* any apparent or declared reason—such as . . . futility of amendment . . . ."

*Foman v. Davis,* 371 U.S. 178, 182 (1962) (emphasis added). It follows, as the Court of Appeals has stated, that "[a] district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." *Interbank Funding Corp. Securities Litigation v. Belizan*, 629 F.3d 213, 216 (D.C. Cir. 2010) (quoting *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,* 366 F.3d 930, 945 (D.C. Cir. 2004)).

As shown below, the filing of the SAC would be futile because Plaintiffs lack standing to pursue any of their claims. Even if the Developers had standing to sue, which they do not, their claims are all timed barred and defeated by the District's discretionary sovereign immunity, if not by Plaintiffs' failure to comply with the statutory pre-suit notification requirements of D.C. Official Code §12-309. Thus, Plaintiffs' Motion should be denied.

## B.  Rule 12(b)(1)

A motion to dismiss for lack of standing is governed by Fed. R. Civ. P. 12(b)(1) because "the defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions,* 835 F.2d 902, 906 (D.C. Cir. 1987). "On a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss*, the plaintiff* bears the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain his claims." *Green v. Stuyvesent*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007) (citing *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C. 2001) (emphasis added); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (party invoking federal jurisdiction has burden to establish all three standing elements).

Where the Rule 12(b)(1) challenge is by motion to dismiss, as in this case, "the Court may dispose of the motion on the basis of the complaint alone or it may consider materials beyond the pleadings 'as it deems appropriate to resolve the question whether it has jurisdiction to hear the case.'" *Donohue v. United States*, 870 F.Supp.2d 97, 103 (D.D.C. 2012). And

"[a]lthough a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the complaint's factual allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Jack's Canoes & Kayaks, LLC v. National Park Service*, 937  F.Supp.2d 18, 26 (D.D.C. 2013) (quoting *Wright v. Foreign Serv. Grievance Bd.,* 503 F.Supp.2d 163, 170 (D.D.C. 2007)) (internal citations and quotation marks omitted).[6] And, even "on a [Rule 12(b)(6)] motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

### C.  Rule 12(b)(6)

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint[.]" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Under the Federal Rules of Civil Procedure, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 566 U. S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (in turn, quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986))).). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration marks omitted).

---

[6] This heightened scrutiny is applied because the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Al-Owhall v. Ashcroft*, 279 F.Supp.2d 13, 22 (D.D.C. 2003)(quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C. 2001)).

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

## III.   PLAINTIFFS LACK STANDING TO CHALLENGE THE FORECLOSURE OR TO PROCEED AGAINST THE DISTRICT

Plaintiffs lack standing to pursue their claims. "Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 570 U.S. ---, 133 S.Ct. 2652, 2661 (2013) (citing Art. III, ¶ 2). A complaint is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the constitutional authority to adjudicate the dispute. *See Vemuri v. Napolitano*, 845 F. Supp. 2d 125, 126 (D.D.C. 2012) (Kollar-Kotelly, J.) (dismissing complaint pursuant to Rule 12(b)(1) for lack of constitutional and prudential standing).

"One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.* (citations and internal quotations omitted); *cf. Vemuri*, 845 F. Supp. 2d at 128 ("[t]he Court begins with the presumption that it does not have subject matter jurisdiction over a case . . . [and] the plaintiff bears the burden of establishing" otherwise). Because it is a "threshold jurisdictional question," standing "cannot be assumed in resolving litigation." *Lozansky v. Obama*, 841 F. Supp. 2d 124, 129 (D.D.C. 2012) (Kollar-Kotelly, J.)

(citation and internal quotations omitted); *see also* Fed. R. Civ. P. 12(h)(3) ("[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). Significantly, "[a] court may look beyond the pleadings to resolve disputed jurisdictional facts when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *Tootle v. Secretary of Navy*, 446 F.3d 167, 174 (D.C. Cir. 2006).

To establish standing, the party invoking federal jurisdiction bears the burden of demonstrating three "irreducible constitutional minimum" requirements:

> *First*, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Second*, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Third*, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (emphasis added). *See also Hollingsworth*, *supra.* These basic requirements—injury-in-fact, causation, and redressability—must be proven separately as to each request for relief. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 185 (U.S. 2000) ("a plaintiff must demonstrate standing separately for each form of relief sought"); *see also Lewis v. Casey*, 518 U.S. 343, 358 (1996) ("standing is not dispensed in gross").

"Because subject matter jurisdiction focuses on the Court's power to hear a claim, the Court must give the plaintiff's factual allegations closer scrutiny than would be required for a 12(b)(6) motion for failure to state a claim. *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, --- F. Supp.3d ---, 2015 WL 5449791 *5 (D.D.C. Sept. 16, 2015) (citing *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13–14 (D.D.C. 2001). Under this

standard, Plaintiffs fail to satisfy the "constitutional minimum," *see Lujan*, 504 U.S. at 561, through the factual allegations of their proffered SAC.

On March 19, 2015, the D.C. Court of Appeals affirmed the dismissal of Developers' suit in its entirety for Plaintiffs' lack of standing. Plaintiffs lacked an actionable property interest in the Development Land at the time of the Foreclosure. *UMC Dev.,* 2015 WL 4113371, at *5, *7. The SAC does not cure this jurisdictional defect.

## A.  Plaintiffs Do Not Allege An Actual, Particularized Concrete Injury-In-Fact

Plaintiffs assert they had two interest protected by the Constitution and D.C. law: an Ownership Interest (SAC, *passim*; FAC, *passim*; Complaint filed in 2013 CA 003789 (SC Compl.) ¶¶ 3, 4, 38, 62, 91, 138, 139, 141, 150) and a Development Interest (SAC, ¶¶ 91, 130, 131). The allegations Plaintiffs use to support their Ownership Interest are the same as those the D.C. Court of Appeals found wholly inadequate. For the reasons stated by the D.C. Court of Appeals, *UMC Dev.,* 2015 WL 4113371, at *5, the Ownership Interest is not "a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," that can give rise to an injury-in-fact conferring standing. *See Lujan*, 504 U.S. at 560-61.[7] Plaintiffs' supposed Development Interest is equally deficient.

### 1.  No Ownership Interest Ever Materialized

Plaintiffs repeatedly assert their legal conclusion that the Developers were the "rightful owner" of the Development Land. *See, e.g.*, SAC, ¶¶ 2, 3, 4, 34, 36, 60, 81, 83; *see also* FAC, ¶¶ 2, 3, 4, 34, 36, 60, 81, 83; SC Complaint ¶¶ 2, 3, 4, 34, 36, 60, 81, 83. Plaintiffs' assertions regarding their own legal rights are legal conclusions unentitled to deference in deciding these

---

[7]  As discussed below, at 27-28, Plaintiffs' success in relying on the Ownership Interest is precluded by the *Rooker-Feldman Doctrine. See Richardson v. District of Columbia Ct. of App.*, 83 F.3d 1513, 1514 (D.C. Cir. 1996) (citing *District of Columbia v. Feldman*, 460 U.S. 462, 476 (1983) *and Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923)).

12

motions. *Browning*, 292 F.3d at 242; *see also Twombly*, 550 U.S. at 555; *Iqbal*, 566 U.S. at 678; *Nat'l Union Fire Ins. Co.,* --- F. Supp.3d ---, 2015 WL 5449791 *5 (D.D.C. Sept. 16, 2015). In fact, Plaintiffs are mistaken. Their legal conclusions are contradicted by the very documents on which Plaintiffs purportedly rely, *UMC Dev.,* 2015 WL 4113371, at *5 and fn.25 (Plaintiffs admitted they "only had an expectation of transfer of title" and court not obligated to credit Developers' "bare assertion" of rightful ownership), and by their own factual allegations in the SAC (and FAC and SC Complaint), *see id*; *Browning*, 292 F.3d at 242.

The UMC Operating Agreement provided "that CMC Realty would be bound to 'the terms and conditions of the Acquisition Loan Agreement between it and the (anticipated) District-SHW Partnership.'" *UMC Dev.,* 2015 WL 4113371, at *2. Once CMC Realty took ownership of the Development Land, it did so under the terms of the Partnership Agreement, the Deed of Trust, and the Acquisition Loan Agreement. *Id*.

CMC Realty gained possession of the Development Land, on November 7, 2007, by executing, respectively, the Partnership Agreement, through which the purchase of the Hospital and Development Land was financed, the Deed of Trust, and the Acquisition Loan Agreement. However, under the Partnership Agreement and the Acquisition Loan Agreement, written consent from the District was a condition precedent to CMC Realty and/or SHW-GSE conveying the Development Land to anyone or any entity, including to UMC Development. Exh. 1, Sec. 4.2(n); Exh. 3, ¶11(a); *see also* Trial Ct. Order, Exh. 6 at 4. Thus, CMC Realty could not transfer ownership to the Development Land "without the District's consent to the transfer of title from CMC Realty to the developers—consent which the District had no obligation to CMC Realty, or the developers, to give." *UMC Dev.*, 2015 WL 4113371, at *5.

The "Acquisition Loan Agreement between CMC Realty and the District–SHW

Partnership required the latter's 'prior approval (which [could] be given or withheld in [its] sole and absolute discretion),' before CMC Realty could dispose, convey, transfer, license the use of, encumber, or permit the conveyance, transfer, or encumbrance of any part of the property." *Id.*; *see also* Acquisition Loan Agreement, Exh. 3, ¶11(a). "The District–SHW Partnership Agreement, in turn, provided that the District and *the District alone had the authority to control the sale of the property*, at least for ten years." *UMC Dev.*, 2015 WL 4113371, at *5. (emphasis added); *see also* Partnership Agreement, annexed as Exh. 1, at 4.

Thus, under the Operating Agreement, the Developers' interest in the Development Land was only "a contingent future interest that could not mature into an actual present interest without the District's consent to the transfer of title from CMC Realty to the developers— *consent which the District had no obligation to CMC Realty, or the developers, to give*." *Id.* (emphasis added). *UMC Dev.,* 2015 WL 4113371, at *5, *7.[8]

Plaintiffs concede in the SAC, as they have conceded throughout their multi-fora litigation of these issues, that the District never authorized the transfer of the Development Land to UMC Development. SAC, ¶¶ 44, 49 (by letters of March 12, & 13, 2008, CMC Realty requested District to authorize transfer of Development Land to Developers), 50 ("District never formally responded to CMC Realty's request to transfer title to Development Land."); FAC, ¶¶ 38-40 (District did not approve transfer of Development Land requested in writing by CMC Realty on March 12 and 13, 2008); SC Complaint ¶ 42; *see also UMC Dev*., 2015 WL 4113371, at *2 ("In March 2008, CMC Realty twice requested permission from the District to transfer title of the development land to UMC Development. The District declined to approve the transfer.")

---

[8] Indeed, the Operating Agreement acknowledges that UMC Development's interest in the Development Land was merely a future interest, employing the future tense when discussing the transfer of the Development Land to UMC Development. Exh. 4, ¶ 3 ("It is presently anticipated by the Members that the Company shall transfer all of portions of the Development Land …. [and that] promptly following OTR's assignment of separate A&T Lots for the Company, SHW-GSE and CMC shall convey title to the Development Lots to [UMC Development].").

In fact, the SAC, the FAC, and the SC Complaint all show that "the District unambiguously and definitively demonstrated its disinterest in fulfilling the contingency on which the developers' property interest was based both before and after the foreclosure." *UMC Dev.,* 2015 WL 4113371, at *5; Trial Ct. Order, Exh. 6, at 5 (by time of foreclosure, "the District's refusal to approve any conveyance from CMC to Plaintiffs was clear and unequivocal"). Without the District's approval, Plaintiffs had nothing more than a unilateral expectation that the terms of the Operating Agreement would be fulfilled. But a unilateral expectation is not enough to create a property interest sufficient to establish standing. *See Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Thus, Plaintiffs' supposed Ownership Interest does not confer standing.

Finally, because Plaintiffs did not have an actual Ownership Interest or Development Interest, *see* pp. 16-19, in the Development Land at the time of the foreclosure, their rights vis-à-vis the foreclosure sale were not more than those of any other member of the public. *See* Trial Ct. Order at 5 n.5. Thus, the supposed "unfairness" of the terms of the foreclosure sale is the sort of generalized grievance that would affect all members of the public equally, each and every one of whom could have, if they chose, participated in this sale. However, any injury related to the structure of the foreclosure sale, in which they did not participate, is not one that "affects [Plaintiffs] in a personal and individual way." *Hollingsworth,* at *7. "A litigant raising only a generally available grievance about government . . . and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." *Hollingsworth,* at *7. *See also* Trial Ct. Order at 5 n.5 ("Plaintiffs also argue that the terms of the foreclosure auction were rigged by the District and precluded them from

participating. This injury is a generalized grievance that is not particularized to the plaintiffs; it is purely speculative that plaintiffs would have participated in the foreclosure auction had the terms been different."). Accordingly, Plaintiffs lack standing to challenge the terms of the foreclosure sale, or any other District action, now.

### 2. Plaintiffs' Development Land-Based Revenues and Investments Do Not Establish Standing

Plaintiffs' alleged investments and lease revenues do not establish or show any property interest in the Development Land. While these expenditures may show that the Developers thought they had obtained property interests through the Operating Agreement or that they based their hopes or expectations on the Operating Agreement, the text of that contract proves that it provided Plaintiffs no property interests and supported no *reasonable* expectations. This is because any hope that Developers had of gaining a property interest based on the Operating Agreement depended entirely on the District exercising its unfettered discretion in favor of conferring such an interest – something it had absolutely no obligation to do. *UMC Dev.,* 2015 WL 4113371, at *2, *5.

Yet, Plaintiffs now allege that through the Foreclosure, the District deprived them of property interests in their supposed rights to develop the Development Land. SAC ¶ 92. Plaintiffs aver that these supposed "Development Interests" were shown to exist "by the[ir] development plans, substantial investments, and ongoing and expected future returns including rent payments – at the time of the wrongful foreclosure," SAC ¶ 92, and that "Jacksophie had formed a reasonable, investment-backed expectation that it would derive fair returns from its investment in the Development Land," *id.* ¶ 97. These wholly conclusory allegations form a circular argument and fail to show any factual basis for standing. Other SAC allegations exemplify how Plaintiffs confuse their hopes with reasonable investment backed expectations,

interests or rights capable of conferring standing. In FAC ¶ 46, the Developers contend that a supposed "lucrative lease agreement that *would have* made CVS an anchor tenant on the Development Land" but for the fact that "*the deal never closed*, …nevertheless confirms the[ir] legitimate commercial interest in the Development Land and the potential returns the Developers reasonably expected to derive therefrom." (Emphasis added).

The Developers' hopes, plans, and/or intentions to exploit the Development Land without any ownership interest in it, to profit from their alleged expenditures to develop land, and to enjoy income from leases they had no right to enter into are not reasonable, investment backed expectations. *See District Intown Properties Ltd. P'ship v. District of Columbia,* 198 F.3d 874, 879 (D.C. Cir. 1999). In *District Intown*, the D.C. Circuit analyzed and rejected a developer's Takings claim because the plaintiff lacked the necessary reasonable investment backed expectation of property utilization to support the claim. That plaintiff had purchased a tract of land and succeeded in having it subdivided into nine smaller parcels, on which it intended to build townhomes. *Id*. at 876. The next year all nine lots were declared historic landmarks. *Id.* Thus, three years later, when the developer sought building permits to construct townhomes on the lots, the application was denied because the construction was incompatible with the parcels' landmark status. *Id*. The Court affirmed the district court's grant of summary judgment to the District because the record showed that the District had not disappointed any reasonable investment-backed expectations of the developer; "[t]his is not surprising, because District Intown could not have had any reasonable investment-backed expectations of development given the background regulatory structure at the time of subdivision." *Id.* at 877. In *Intown Properties*, the Court explained requirements to establish a reasonable investment backed expectation.

> A *reasonable investment-backed expectation* must be more than a 'unilateral expectation or an abstract need.' *Ruckelshaus v.*

> *Monsanto Co.,* 467 U.S. 986, 1005–06, 104 S.Ct. 2862, 81 L.Ed.2d
> 815 (1984) (quoting *Webb's Fabulous Pharmacies, Inc. v.*
> *Beckwith,* 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358
> (1980)). Claimants cannot establish a takings claim "simply by
> showing that they have been denied the ability to exploit a property
> interest that they heretofore had believed was available for
> development." *Penn Central Transp. Co.*[ *v. New York City*] *,* 438
> U.S. [104] at 130, 98 S.Ct. 2646 [1978].

*Id.* at 879 (emphasis in original).

Addressing the facts of that case, the Court observed that "District Intown suggested at oral argument that it has satisfied the requirement of demonstrating reasonable investment-backed expectations because it purchased property that, at the time of purchase, was subdividable. This is not sufficient to establish the existence of reasonable investment-backed expectations." *Id.* at 883. In that case, because plaintiff proposed to alter the use of the land *that it had purchased* "from the property's traditional use, and the moment of purchase is so attenuated from the moment of subdivision," the developer was required to identify actions in addition to "mere purchase" "to establish the reasonableness of its expectations." *Id.*

As shown above and held by the D.C. Court of Appeals, the Developers in this case never had an ownership interest, like Intown Properties. No further analysis is required to support denial of Plaintiffs' Motion and dismissal of this action for lack of standing. That the Developers chose to expend funds speculating that they might someday obtain title to the Development Land does not transform their hopes into reasonable expectations, much less establish any harm that is actual, concrete and particularized, and can give rise to an injury-in-fact conferring standing. *See Lujan*, 504 U.S. at 560-61. This is especially true regarding expenditures made and agreements entered into after March 2008, *see* SAC ¶¶ 42-46, for two reasons. First, CMC Realty had failed, in March 2008, to obtain the District's authorization. SAC ¶¶ 49, 51; *UMC Dev.,* 2015 WL 4113371, at *5 ("The District denied the request."). Second, transfer or encumbrance of any part

18

of the Development Land required the District's "prior approval which could be given or withheld in its sole and absolute discretion." *UMC Dev.,* 2015 WL 4113371, at *2 (quoting Acquisition Loan Agreement).

Plaintiffs allege that they signed a lease "with GSE Holdings, LLC (GSE), an entity controlled by SHA for commercial space on the Development Land" under which GSE was to pay the Developers annual rent, SAC, ¶ 44, but that fact does not alter this disposition. The fact is the Developers had no authority under the Operating Agreement to lease Development Land to GSE. *See UMC Dev.,* 2015 WL 4113371, at *2, *5. Indefinite enjoyment of proceeds from an unlawful agreement is not a reasonable, investment-backed expectation. Simply put, the Developers could not have any reasonable investment-backed expectations of development regarding real property they did not own, could not force the sale of, and lacked any right to use. *Cf. Intown Properties, supra.*

### B. Plaintiffs Cannot Establish Traceability

In addition to Plaintiffs' inability to identify an injury–in–fact caused by the District, they cannot show that any supposed injury is traceable to the action they challenge, the foreclosure. On "rightful ownership" allegations in the SC Complaint that are virtually identical to those in the SAC and the FAC, Judge Weisberg and the D.C. Court of Appeals each held that the Developers were not denied ownership of the Development Land through the foreclosure. Trial Ct. Order at 5-6, *UMC Dev.,* 2015 WL 4113371, at *5. Plaintiffs' "contingent future interest in the transfer of title appear[ed] to have been lost long before the foreclosure" – with the District's denials of CMC Realty's requests to approve the transfer – more than two years before the foreclosure. *UMC Dev.,* 2015 WL 4113371, at *5; *see also* Trial Ct. Order at 5 (by time of foreclosure, District's refusal to transfer Development Land "was clear and unequivocal").

Likewise, even now, Plaintiffs do not trace any supposed Development Interest injury to the foreclosure. In holding that the Developers had not established standing based on supposed Development Rights "*irrespective of whether they held title*," the D.C. Court of Appeals stated Plaintiffs had failed in the SC Complaint to substantiate their assertion that "they were deprived of an active stream of rental income." *UMC Dev.*, 2015 WL 4113371, at *6. The SAC contains a number of new allegations regarding this supposed income stream and investments that were lacking from the FAC and the SC Complaint properly dismissed by the Superior Court. *See* SAC ¶¶ 34-36, 39-46, 48. However, Plaintiffs do not allege facts in the SAC or the FAC reflecting that the Foreclosure cut off any active rental income stream. *See generally* SAC, FAC. Instead, the Developers allege that they sought, but failed to lease property to CVS. SAC ¶ 46. Plaintiffs also allege that they sued Specialty Hospitals of Washington-GSE Holdings LLC (GSE), for its breach of an agreement that required to GSE account to Plaintiffs for revenues received by GSE from its lease with a third party. *Id*. ¶ 45. However, Plaintiffs allege that the matter was "resolved though a settlement agreement" – not that any related leasehold revenues were terminated by the foreclosure. *Id.*

Finally, Plaintiffs aver that they entered into a lease with GSE on June 1, 2009. *Id.*, ¶ 44. GSE supposedly made its first semi-annual lease payment belatedly and failed to make its second, due on January 1, 2010. *Id.* Plaintiffs sued, and on February 26, 2010, GSE was ordered to pay past due rent and fees. *Id.* But Plaintiffs do not allege that the leasehold survived the litigation, that any further payments were received, or, much less, that the Foreclosure ended that lease. These allegations fail to satisfy Plaintiffs' burden to establish standing under the "closer scrutiny" required by Rule 12(b)(1) regarding "the Court's power to hear a claim." *See Nat'l Union Fire Ins. Co.*, 2015 WL 5449791 *5.

The Developers also allege that that they committed certain resources to the Development Land. FAC, ¶¶ 39-43. These allegations, too, fail to establish any injury traceable to the Foreclosure. *See UMC Dev.,* 2015 WL 4113371, at *6. "However, the[se] injuries . . . as with the rest, could not have been a result of the foreclosure. The benefit of the developers' pre-development investments (if any) was wrongfully 'retain[ed],' and 'accepted and enjoyed' by the District, to the developers' detriment, when the District did not approve CMC Realty's request to transfer title (which the District had no obligation to do)."[9] *Id.* That Developers' efforts to make a profit off the Development Land that they did not own is clear; but it is equally clear that the Developers' business failures were not caused by the Foreclosure. The D.C. Court of Appeals quite properly observed regarding the District's non-transferal of the property, that the Foreclosure did not prevent the District from consenting to the transfer; it could have allowed the transfer after the foreclosure. *Id.* at *5. It chose not to, *id.* at *5, as it was entitled to do, *id.* at *2, *5. Thus, Plaintiffs lack standing because their claimed injuries are not traceable to the Foreclosure.

## C.  <u>Plaintiffs Cannot Demonstrate Redressibility</u>

As shown immediately above, Plaintiffs have failed to allege facts allowing the Court to trace their claimed injuries to the Foreclosure. Rather, accepting the Developers' allegations as true for purposes of the District's Opposition and MTD, the facts alleged show that Plaintiffs' injuries flow from the District's refusal to consent to the transfer of the Development Land. *See* SAC, ¶¶ 49, 51, 69, 80; FAC, ¶ 40; *UMC Dev.,* 2015 WL 4113371, at *5; Trial Ct. Order at 5-6. Critically, as discussed above, at 12-16, the Acquisition Loan Agreement and the Partnership Agreement required CMC Realty and/or SHW-GSE to obtain written consent from the District

---

[9]  For this reason, Plaintiffs' unjust enrichment and *quantum meruit* claims were time-barred long before they filed the SC Complaint.

before the Development Land could lawfully be transferred to or encumbered by the Developers. Exh. 3, Sec. 4.2(n); Exh. 1, Art. 11(a); see *UMC Dev.,* 2015 WL 4113371, at *2. The Developers concede that the District never gave this necessary approval, SAC ¶¶ 49, 51, 69, 80; FAC ¶ 42; *id.* And as both the D.C. Court of Appeals and Judge Weisberg found, the District was entirely within its rights to withhold approval. *UMC Dev.,* 2015 WL 4113371, at *5; Trial Ct. Order at 5-6.

Plaintiffs can only speculate that, but for the foreclosure, the District would have approved transfer of the Development Land to the Developers at some unknown future date. Thus, any chain of causation between the foreclosure and Plaintiffs' inability to take possession of the Development Land is "speculative at best," and insufficient to establish their standing to challenge the foreclosure. *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1159 (D.C. Cir. 2005) ("Unadorned speculation will not suffice to invoke the judicial power."). This causal flaw becomes most evident when examined under the rubric of redressability. As the United States Supreme Court has stated:

> the 'fairly traceable' and 'redressability' components of the constitutional standing inquiry were initially articulated by the Court as 'two facets of a single causation requirement' …. the former examines the causal connection between the assertedly unlawful conduct and the alleged injury, whereas the latter examines the causal connection between the alleged injury and the judicial relief requested.

*Allen v. Wright*, 468 U.S. 737, 753 n. 19 (1984). Thus, in addition to demonstrating that a claimed injury is traceable to a defendant's conduct, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Mallof v. District of Columbia,* 1 A.3d 383, 394-95 (D.C. 2010); *see also Lujan*, 504 U.S. at 571 (finding the redressibility prong of standing not met because it was "entirely conjectural whether

the nonagency activity that affects [plaintiff] will be altered or affected by the agency activity they seek to" enjoin).

Even if Plaintiffs were correct, which they are not, that the foreclosure was unlawful and, thus, void, Plaintiffs still would not be entitled to take ownership of or to exploit the Development Land. Prior to the foreclosure, the District had not provided the approval necessary for CMC Realty to transfer the Development Land to the Developers or to enable them to lawfully develop it. Nor has it done so in the five years since. Thus, to remedy the harm Plaintiffs claim to have suffered, *i.e.* frustration of their intention to develop this property, would require the Court to order the District to reverse its discretionary decision not to approve the transfer of the Development Land to UMC Development[10] in addition to undoing the foreclosure. And "[e]ven if the court were to set aside the foreclosure [- a remedy for which there is no basis -] it would have no authority to order the District to approve the conveyance of the development property from CMC to plaintiffs." Trial Ct. Order at 6.

As Plaintiffs have failed to demonstrate causation or redressibility, they have failed to establish their standing to proceed with their claims against the District. Thus, granting leave to amend would be futile. For the same reasons, the FAC should be dismissed. *Lujan, supra.*

## IV.    THE COURT LACKS JURISDICTION OVER ANY CHALLENGE TO THE FORECLOSURE OR THE DISTRICT'S REFUSAL TO APPROVE TRANSFER OF LAND TO PLAINTIFFS UNDER THE DOCTRINE OF SOVEREIGN IMMUNITY

Plaintiffs also have litigated, and lost, the issue of whether the District's decision to consent to the transfer of the Development Land to them was a discretionary act shielded from judicial review by the doctrine of sovereign immunity. Trial Ct. Order at 6-8. Sovereign

---

[10] As discussed in Section IV, the Court lacks jurisdiction to order the District to reverse this discretionary decision under the doctrine of discretionary function sovereign immunity.

immunity bars suit against the District of Columbia based on its performance of discretionary functions and deprives the Court of subject matter jurisdiction over such claims. *Nealon v. District of Columbia,* 669 A.2d 685, 690 (D.C. 1995) (citing *Powell v. District of Columbia,* 602 A.2d 1123, 1126 (D.C. 1992)); *Aguehounde v. District of Columbia,* 666 A.2d 443, 447 (D.C. 1995); *see also Banneker Ventures v. Graham*, --- F.3d ---, 2015 WL 4910099, at *13 (D.C. Cir. Aug. 18, 2015) (Court lacks subject matter jurisdiction over tort claims against Washington Metropolitan Area Transit Authority where its sovereign immunity applies). This immunity is based on the concern for separation of powers, and rests on the proposition that immunity is vital in the context of discretionary acts because of the necessity and desirability of "freeing policy decisions from jury speculation." *Owen v. Independence,* 445 U.S. 622, 648 (1980) (quoting *Chandler v. District of Columbia,* 404 A.2d 964, 966 (D.C. 1979)). The common law doctrine of sovereign immunity arose from the principle that there can be no legal right against the authority that makes the law on which the right depends. *Kawananakoa v. Polyblank,* 205 U.S. 349, 353 (1907). This has led to the conclusion that no sovereign may be sued in its own courts without its consent. *Nevada v. Hall,* 440 U.S. 410, 416 (1979). The District is recognized as a sovereign for the purposes of municipal government immunity. *See, e.g.*, *District of Columbia v. Owens-Corning Fiberglass Corporation, et al.,* 572 A.2d 394, 401 (D.C. 1989).

To determine whether a claim is barred by sovereign immunity, District of Columbia courts apply the "ministerial-discretionary" test. *See Spencer v. General Hospital of District of Columbia,* 425 F.2d 479, 482-84 (D.C. Cir. 1964). "Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary [i.e., ministerial] if it involves enforcement or administration of a mandatory duty at the *operational level,* even if professional expert evaluation is required." *Beatty v. Wash. Metropolitan Area Transit Auth.*, 860

F.2d 1117, 1127 (D.C. Cir. 1988). The doctrine of sovereign immunity "insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz v. United States,* 486 U.S. 531, 537 (1988). To determine whether an act is discretionary or ministerial, the Court must determine whether it is the kind of action that involves "an element of judgment or choice." *Id.,* at 536-7. If the answer to this inquiry is "yes," then the action is immune from suit unless the government has adopted a statute, regulation, policy, or contractual duty that specifically prescribes a course of action for an employee to follow that would remove the otherwise unfettered discretion of the government employee and make the action ministerial. *Id.* at 536.

Plaintiffs complain about several discretionary actions by the District: the District's non-approval of the transfer of the Development Land to UMC Development, the foreclosure, and the terms of the post-foreclosure sale of assets. Fatal to any claims based on these actions, however, and as discussed below, the Court lacks jurisdiction to entertain challenges to these acts under to the doctrine of discretionary function sovereign immunity.

**A.**  **The District Exercised Its Unfettered Discretion In Not Approving The Transfer Of The Development Land To UMC Development**

As discussed in Section III.A.1 above, the Acquisition Loan Agreement and Partnership Agreement required the District's approval before the SHA Entities could convey an interest in the Development Land to UMC Development. Exh. 3, Art. 11(a); Exh. 1, Sec. 4.2(n). But Plaintiffs concede that the District did not approve the conveyance of the Development Land to UMC Development, SAC ¶¶ 49, 51; FAC, ¶ 42, which was the real impediment to Plaintiffs taking control of, and developing, this real property, *UMC Dev.,* 2015 WL 4113371, at *5; Trial Ct Order at 5-6. Nevertheless, Judge Weisberg held that, to the extent Plaintiffs challenged the District's failure to approve conveyance of the Development Land to them, this discretionary

decision was shielded from judicial review by the doctrine of sovereign immunity. Trial Ct. Order at 7-8 ("it is clear that the District's decision to approve or withhold approval is a discretionary governmental decision, for which the District enjoys immunity from suit.").

Nothing in the Partnership Agreement or the various Loan documents, or in any statute, regulation, or applicable common law principle, restricted the District's discretion in granting or withholding its approval. Significantly, Article 10 of the Acquisition Loan Agreement granted the District the express right "to approve or deny any release [of hospital property] *in its sole discretion*" for development purposes. *UMC Dev.,* 2015 WL 4113371, at *2, *5, fn. 26; (emphasis added). Any decision to approve the transfer of this land, or not, was wholly within the District's discretion. *Id.*; Trial Ct. Order at 7. "The District's decision to grant to withhold its approval of the conveyance of the Hospital property, including the development property, was obviously a discretionary governmental." Trial Ct. Order at 8. Because all of Plaintiffs' claims turn on the District's refusal to approve e transfer of the Development Land, they are subject to the District's discretionary function immunity, and the Court lacks jurisdiction over them.[11] *Berkovitz,* 486 U.S. at 537; 669 A.2d at 690; *Aguehounde,* 666 A.2d at 447.

**B.   The District Acted Within the Discretion Provided It By the Partnership Agreement, Deed of Trust, and the Acquisition Loan Agreement in Conducting the Foreclosure and Post-Foreclosure Sale of Assets**

The partnership and loan documents upon which Plaintiffs base their lawsuit confer upon the District the authority to pursue the remedy of foreclosure Plaintiffs assert it lacked.[12] SAC ¶

---

[11] Even if the Court determines that it is not barred by the doctrine of discretionary function sovereign immunity from entertaining a challenge to the District's discretionary decision not to approve this transfer, any claim predicated on the District's refusal prior to May 31, 2010, including its March 2008 rejection of CMC Realty's transfer requests, would be barred by the 3-year statute of limitations in D.C. Official Code § 12-301.

[12] The enforcement rights available under the Acquisition Loan Agreement include acceleration of the loan, and assumption of financial control of the Hospital and/or its business operations. Exh. 3, ¶ 13.

28; FAC ¶ 26; Exh. 3, ¶¶ 13(a), 14(e)€ The District exercised its unfettered discretion to use these remedies, and is immune from suit for doing so. *Aguehounde*, 666 A.2d at 447.

## V.     THE *ROOKER-FELDMAN* DOCTRINE PRECLUDES RELIEF BASED ON AN ALLEGED OWNERSHIP INTEREST INJURY

The Court also lacks jurisdiction to review the decision by the D.C. Court of Appeals that Plaintiffs lack an actionable claim for injury to their supposed Ownership Interest and standing to challenge the foreclosure based on such injury, as Plaintiffs ask it to do here. Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to review judicial decisions by state and District of Columbia courts." *Richardson v. District of Columbia Ct. of App.*, 83 F.3d 1513, 1514 (D.C. Cir. 1996) (citing *District of Columbia v. Feldman*, 460 U.S. 462, 476 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923)). *See also Richardson v. District of Columbia Ct. of App.*, 962 F. Supp. 1 at 1 (D.D.C. 1997) ("federal district courts lack jurisdiction to hear challenges to the attorney disciplinary proceedings of state courts."). Although limited, this doctrine applies where, as here, "a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006). *Rooker-Feldman* applies to state courts' interlocutory decisions, as well as final decisions. *Richardson*, 83 F.3d at 1515 (citations omitted).

Here, Plaintiffs effectively seek review of the D.C. Court of Appeals' determination that they lacked, at least, an Ownership Interest in the Development Land at the time of the Foreclosure. Because Plaintiffs' claims are predicated, at least in part, on such an interest, the Court cannot grant the relief Plaintiffs seek without reviewing the rulings of the D.C. Court of Appeals. *Fuller v. Mott*, 2014 WL 1688038, *1 (D.D.C. April 23, 2014). *See also Kwasnik v. LeBlon*, 228 Fex.Appx. 238, 242 (3d Cir. 2007). Thus, Plaintiffs' claims are "inexorably intertwined where relief on which standing is premised would require district court to upset state

court judgment." *See Landers Seed Co., Inc. v. Champaign Nat. Bank*, 15 F.3d 729, 733 (7th Cir. 1994). However, this Court lacks jurisdiction to sit in review of the decision of the D.C. Court of Appeals and, therefore, lacks jurisdiction over Plaintiffs' claims based on their supposed Ownership Interest.

**VI.   THE COURT SHOULD AGAIN DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' DISTRICT LAW CLAIMS, WHICH PREDOMINATE OVER THEIR FEDERAL CLAIMS AND RAISE NOVEL AND COMPLEX ISSUES OF D.C. LAW**

In addressing the Developers' opposition to the removal of their initial Complaint to this Court, the Court "decline[d] to exercise supplemental jurisdiction over the Plaintiffs' D.C. law claims pursuant to 28 U.S.C. Sec. 1367(c)(1) and (2)." Dkt 28, at 19. The Court did so for two primary reasons. *Id*. at 15. First, there were several times as many "D.C. claims" as federal claims, and they provided far broader bases for relief. *Id.* Because successful prosecution of the D.C. claims could obviate the need to litigate the due process and Takings claims, constitutional avoidance weighed against exercising supplemental jurisdiction. *Id.* at 15-16 (citing *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 455 U.S. 439, 455 (1998). This remains true.

Second, the D.C. claims raise novel and complex local law issues "that would invariably require this Court to venture into uncharted legal territory, with potentially significant consequences." *Id*. at 16. The Superior Court and D.C. Court of Appeals decisions only buttress this reasoning. In addition, remand promotes judicial economy . *Id.* at 19. That the D.C. Superior Court and Court of Appeals have expended considerable effort in familiarizing themselves with and adjudicating the issues presented by Plaintiffs' claims adds weight to the consideration of judicial economy this Court has previously made.

Finally, Plaintiffs argue that this Court should exercise supplemental jurisdiction "because the D.C. courts have indicated that they are unwilling to adjudicate these [D.C. law]

claims on the merits ….” Dkt 62 at 6 (without citation to any support). Plaintiffs' contention that the District's courts are willing to adjudicate their claims on the merits is baseless and improper. This Court should not allow the appearance that that it credits this assertion by exercising supplemental jurisdiction. For all these reasons, if this Court does not find that Plaintiffs' amendment of its Complaint is futile, it should remand the D.C. law claims as it did before.

**VII.    PLAINTIFFS' CLAIMS ARE TIME-BARRED BECAUSE THIS COURT'S DISMISSAL OF THE FEDERAL CLAIMS AND THE D.C. SUPERIOR COURT'S DISMISSAL OF THE NON-FEDERAL CLAIMS ELIMINATED THE TOLLING OF THEIR STATUTES OF LIMITATIONS PREVIOUSLY TRIGGERED BY THE COMMENCEMENT OF PLAINTIFFS' SUIT IN D.C. SUPERIOR COURT**

Even if Plaintiffs could establish standing, amendment of the Complaint would be futile because all of Plaintiffs' claims are time-barred. The District's latest complained-of conduct was the July 9, 2010 foreclosure sale. And this Court severed and dismissed Plaintiffs' constitutional claims, Counts I and II, by Order dated October 8, 2013. Dkt Nos. 27 and 28. As the District argued in its opposition to Plaintiffs' motion for clarification, *see* Dkt No. 30 at 3-4, this severance and dismissal of Plaintiffs' federal claims resulted in these claims being time-barred, even though they were dismissed without prejudice and without a ruling on the merits.

The Court's severance and dismissal without prejudice of Plaintiffs' federal claims eliminated the tolling effect caused by the May 2013 filing of the SC Complaint. As the D.C. Circuit held in *Ciralsky v. C.I.A.*, 355 F.3d 661, 372 (D.C. Cir. 2004):

> When a complaint is timely filed, the statute of limitations is tolled, and subsequent amendments to the complaint are also regarded as timely …. However, once a suit is dismissed, even if without prejudice, the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing. In short, when a suit is dismissed without prejudice, the statute of limitations is deemed unaffected

> by the filing of the suit, so that if the statute of limitations has run
> the dismissal is effectively with prejudice.

(Internal quotations omitted). *See also, Steward-Veal v. District of Columbia*, 896 A.2d 232, 237

(D.C. 2006).   Plaintiffs previously conceded this point, noting that:

> [a]ssuming that a three-year statute of limitations governs the
> federal claims at issue and that the federal claims would have
> accrued in or around July 2010, when the District wrongfully
> foreclosed, the District seems positioned to argue that the dismissal
> without prejudice nonetheless would leave the claims time-barred
> unless immediately re-pleaded. *See Ciralsky*, 355 F.3d at 667.

Dkt. No. 29 at 3.[13]

Plaintiffs' federal claims stemming from the District's allegedly wrongful foreclosure of

the Hospital are subject to a 3-year statute of limitations. D.C. OFFICIAL CODE § 12-301. The

foreclosure and sale occurred on July 9, 2010, SAC ¶ 78; FAC, ¶ 68; that three-year period has

run, and had run on October 8, 2013, when the Court dismissed the federal claims. Thus, even

though Plaintiffs' federal claims were dismissed without prejudice, the statute of limitations as to

these claims has run, and Plaintiffs are precluded from re-filing them in either federal or state

court. *See Ciralsky*, 355 F.3d at 372; *Steward-Veal*, 896 A.2d at 237.

Furthermore, unlike in *Ciralsky*, in which the D.C. Circuit was concerned that the Court

was unaware of the effect of its actions and "plainly thought it was giving the plaintiff one more

chance to get things right," *Ciralsky* 355 F.3d at 674, this Court has been apprised of the effect of

its dismissal of Plaintiffs' federal claims. Plaintiffs themselves brought this issue to the Court's

attention in their motion for clarification, arguing that "motions for reconsideration are

appropriate means to 'alert[] the district court that because the statute of limitations had expired,

the dismissal without prejudice would operate as a dismissal with prejudice.'" Dkt No. 29 at 5

(citing *Justice v. United States*, 6 F.3d 1474, 1481 (11th Cir. 1993)); *see also* Dkt No. 30 at 3-4.

---

[13]  Also, Plaintiffs did not seek any such relief regarding their non-federal claims.

Even so, being apprised that Plaintiffs' claims were then time-barred under controlling precedent, the Court did not order that any claim for which the statute of limitations had run be revived. Instead, the Order clearly and precisely averts that result by stating that the statute of limitations applicable to these claims be "*prospectively* tolled." Dkt No. 32 (emphasis added). The Court also declined to hold that its October 8, 2013 Order does not otherwise prejudice Plaintiffs' ability to subsequently pursue those claims. *Id.* Thus, the 3-year statute of limitations applicable to Plaintiffs' constitutional claims against the District has run.

The same is true of Plaintiffs' non-federal claims, all of which supposedly accrued on July 9, 2010, with the foreclosure. The limitations periods for each of the claims is also three years:  Count III, Wrongful Foreclosure; Count IV, Specific Performance of the Operating Agreement, D.C. Code § 12-301(8); Count V, Tortious Interference with Prospective Economic Advantage; Count VII, Unjust Enrichment; Count VIII, Constructive Trust; Count XI, Quantum Meruit, D.C. Code § 12-301(8); and Count VI, Breach of Contract, D.C. Official Code § 12-301(7). The D.C. Superior Court's August 13, 2015 dismissal without prejudice of all District law claims caused the claims to be time-barred just like  the federal claims.

In fact, Plaintiffs' Unjust Enrichment and *Quantum Meruit* claims were time-barred *before* they filed suit on May 31, 2013. "Under D.C. law, a plaintiff states a claim for unjust enrichment when: (1) the plaintiff confers a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Sabre International Security v. Torres Advanced Enterprise Solutions, Inc.*, 820 F. Supp.2d 62, 76 (D.D.C. 2011) (citations omitted). "The statute of limitations 'starts to run upon the occurrence of the wrongful act giving rise to a duty of restitution.'" *News World Communications, Inc.*, *v. Thompsen*, 878 A.2d 1281, 1223 (D.C. 2005) (citations omitted). This

happens when the plaintiff has completed its services to the defendant and the defendant has refused to provide compensation for those services. *See id.*, at 1225.

Assuming solely for purposes of this motion that the actions alleged in SAC ¶¶ 34-43 could be deemed to have benefited the District, the Developers supposedly benefitted the District by surveying and subdividing the Development Land, as they were required to do under the Operating Agreement to which the District was not a party, and by "work[ing] with various consultants and service providers who developed plans for the Development Land," as well by "contributing their vital expertise and insight . . . ." (SAC ¶¶ 36-38, 133-34, 145-46.) The last of these "contributions" was allegedly made in 2009 (SAC ¶¶ 39-43), even though the District had withheld its approval of the transfer of the Development Land – which, supposedly, would have been the Developers' "compensation" – in March 2008, (SAC ¶¶ 49, 51; FAC ¶¶ 38-40), *see UMC Dev.,* 2015 WL 4113371, at *5. Accordingly, any unjust enrichment and/or *quantum meruit* claims that Plaintiffs may have had were time-barred on or before December 31, 2012 – nearly six months before the developers filed suit.

Therefore, the filing of the SAC would be futile, and should be denied. For these reasons, the FAC, should also be dismissed with prejudice.

## VIII.   PLAINTIFFS' NON-FEDERAL CLAIMS SEEKING UNLIQUIDATED DAMAGES ARE BARRED BY DEVELOPERS' NON-COMPLIANCE WITH THE MANDATORY NOTICE REQUIREMENTS OF D.C. OFFICIAL CODE § 12-309

Plaintiffs simply failed to comply with the notice requirements of D.C. Official Code § 12-309 and therefore cannot survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See*, *Candido v. District of Columbia,* 242 F.R.D. 151, 158 n.6 (D.D.C. 2007). Specifically, a party may not maintain an action:

> against the District of Columbia for unliquidated damages to
> person or property unless, within six months after the injury or
> damage was sustained, the claimant, his agent, or attorney has
> given notice in writing to the Mayor of the District of Columbia of
> the approximate time, place, cause, and circumstances of the injury
> or damage.

D.C. Official Code § 12-309. Compliance with this provision is a mandatory condition precedent to filing a lawsuit against the District. *Barnhhardt v. District of Columbia*, 8 A.3d 1206, 1212 (D.C. 2010).

Plaintiffs seek, as an alternative remedy to the rescission of the foreclosure and an order stating Plaintiffs are the rightful owner, "money damages to be paid by the District and NFPH in an amount to be determined at trial." SAC ¶ 152; *see also* ¶¶ 153 (damages for unjust enrichment); 154 (seeking money damages, generally). Plaintiffs' own filing makes clear that these compensatory damages were not easily ascertainable when they arose and, therefore, constitute unliquidated damages. *Elzeneiny v. District of Columbia*, 699 F.Supp.2d 31, 32 (D.D.C. 2010) (quoting *District of Columbia v. Campbell*, 580 A.2d 1295, 1300 (D.C. 1990)). Therefore, Plaintiffs' tort and quasi-contract claims set forth in Count III (Wrongful Foreclosure), Count V (Tortious Interference with Prospective Economic Advantage), Count VI (Breach of Contract (Third-Party Beneficiary)), Count VII (Unjust Enrichment), and Count IX (*Quantum Meruit*) are subject to the mandatory notice requirements of D.C. Official Code § 12-309. *See Cheeks of North Amer., Inc. v. Fort Myer Const. Corp.*, 807 F.Supp.2d 77, 98 (D.D.C. 2011) (dismissing a claim for tortious interference with business relationships for failure to comply with D.C. Official Code § 12-309); *Snowder v. District of Columbia*, 949 A.2d 590, 600-601 (D.C. 2008) (dismissing a claim for quantum meruit and other quasi-contract claims for failure to comply with D.C. Official Code § 12-309); *Winder v. Erste*, 2007 WL 6945865, at *3 (D.D.C. 2007) (dismissing a claim for tortious interference with prospective economic advantage

for failure to comply with D.C. Official Code § 12-309); *Johnson v. Fairfax Village Condominium IV Unit Owners Assoc.*, 641 A.2d 495, 504-05 (D.C. 1994) (acknowledging that a claim for wrongful foreclosure sounds in tort); *see also* Trial Ct. Order at 8-12 (dismissing Developers' Unjust Enrichment and *Quantum Meruit* claims for Plaintiff's non-compliance with §12-309), *aff'd on other grounds*, *UMC Dev.,* 2015 WL 4113371, at *7 (declining to address Developers' challenges to dismissal of claims on § 12-309 grounds.)

Fatal to these claims, is Plaintiffs failure to timely submit the required notice to the Mayor of the District of Columbia of their claims for unliquidated damages. Section 12-309 requires written notice that "disclose(s) both the factual cause of the injury and a reasonable basis for anticipating legal action as a consequence." *Kennedy v. District of Columbia*, 519 F.Supp.2d 50, 59 (D.D.C. 2007). Yet the District did not receive this notice. (Exh. 10 (Record of search conducted by Office of Risk Management). Counts III, V, VI, VII and IX should, therefore, be dismissed.

## IX.   PLAINTIFFS' CLAIMS AGAINST THE DISTRICT FAIL TO STATE A CAUSE OF ACTION FOR WHICH RELIEF CAN BE GRANTED

In addition to Plaintiffs' failure to demonstrate their standing to pursue the claims in the Complaint against the District, or to demonstrate that the Court has jurisdiction to review the District's discretionary actions, Plaintiffs have, generally, failed to adequately plead actionable claims against the District. As discussed above, at 9-10, to survive a Rule 12(b)(6) motion, a complaint must alleged facts rendering each of its claims plausible on its face. *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**A. Plaintiffs Have Not Stated A Claim Against The District For A Violation Of Their Procedural Or Substantive Due Process Rights (Count I)**

### 1. Procedural Due Process

"In order to make out a violation of due process, the plaintiff must show the Government deprived her of a "liberty or property interest" to which she had a "legitimate claim of entitlement," and that "the procedures attendant upon that deprivation were constitutionally [in]sufficient." *Roberts v. United States,* 741 F.3d 152, 161 (D.C. Cir. 2014). If, unlike here, a plaintiff can demonstrate a protected property or liberty interest, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Plaintiffs claim that the District failed to give adequate notice of the foreclosure because the District "claim[ed] authority under the note that it in fact lacked," and because the foreclosure sale was "grossly unfair." SAC ¶¶ 88, 89; FAC ¶¶ 77, 78. Although Plaintiffs complain of alleged harm to their purported contractual rights, the SAC and FAC do not state a due process claim against the District for three reasons.

First, Plaintiffs have not alleged facts that plausibly suggest they had a property interest in the Development Land sufficient to trigger a due process requirement, as reflected by the D.C. Court of Appeals' analysis. *UMC Dev.,* 2015 WL 4113371, at *5 (Plaintiffs' "contingent future interest in the transfer of title appears to have been lost long before the foreclosure."); Trial Ct. Order at 5-6.–To have a property interest, an individual "must have more than a unilateral expectation of it[, h]e must, instead, have a legitimate claim of entitlement to it." *Castle Rock,* 545 U.S. at 756.

As pled here, Plaintiffs' property interest in the Development Land was defined by the Operating Agreement. However, this interest was, at most, a future conditional interest in the Development Land that never vested, and could never vest, as the District never authorized transfer of this property to UMC Development. SAC ¶¶ 49, 51; FAC ¶ 42; *UMC Dev.,* 2015 WL 4113371, at *5 ("UMC Development's interest (and by extension Jacksophie's interest) was a contingent future interest that could not mature into an actual present interest without the District's consent to the transfer of title from CMC Realty to the developers—consent which the District had no obligation to CMC Realty, or the developers, to give."). But rights subject to a condition, the satisfaction of which the person asserting the right does not actually control, do not trigger due process rights or requirements. *See Mekes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 404 (D.C. Cir. 2011) (finding that the Government's discretion in granting or denying a benefit that is subject to a condition wholly out of the plaintiff's control does not confer a right that triggers the requirements of due process). Plaintiffs' potential interest at the time of the foreclosure therefore did not trigger due process notice requirements. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (beginning its analysis by determining that the Plaintiff had a present, actual, interest in the property).

Besides this Ownership Interest, SAC ¶¶ 39-43, Plaintiffs seem to imply an interest or reasonable investment backed expectancy of returns on money and time that, based on the Operating Agreement, the Developers sunk into land that they did not then and would not ever own. As shown above, at 16-19, these new allegations do not cure Plaintiffs' lack of standing, much less give rise to a protected property or liberty interest to support a due process or Takings claim.

Second, even if Plaintiffs' future conditional, and unfulfilled, interest triggered the requirements of due process, Plaintiffs concede the adequacy of notice provided by the District regarding the foreclosure process and sale. Notably, they do not allege, at all, that they were deprived of notice of the foreclosure or an opportunity to be heard regarding this matter. *See generally,* SAC; FAC. Rather, they complain only about the *content* of the notice regarding the foreclosure, claiming that the process was "unfair." SAC ¶¶ 87-88; FAC ¶¶ 77-78. Disagreeing with the District's stated basis for action, or the action itself, does not render the notice provided unconstitutionally deficient. Plaintiffs had actual notice of what the District was doing and why, and actual notice, while not required, "more than satisf[ies]" due process. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). Plaintiffs may disagree with the District's stated basis for the foreclosure and the manner in which the foreclosure sale occurred, but their disagreement is not enough to state a procedural due process claim.

Third, Plaintiffs fail to allege that they were deprived of an opportunity to be heard regarding the foreclosure or the foreclosure sale. Their due process claim must fail for this reason alone. But even absent this failure, and assuming they have pled a property interest that would trigger a right to be heard on the validity of the foreclosure or foreclosure sale (which the District strongly disputes), Plaintiffs *did* have an opportunity to be heard. Plaintiffs acknowledge that they knew how to contact the District, writing to them after the District issued the Notice of Default and assumed control of the Hospital. SAC ¶ 69; FAC ¶ 60. Notably, Plaintiffs do not allege that they attempted to contact the District about their purported interest in the Development Land after the District issued the Notice of Foreclosure. Nor do they allege that they attempted to discuss the District's asserted basis for the foreclosure or the terms of the foreclosure sale with the District. *See generally,* SAC; FAC.

Plaintiffs also had the opportunity to join CMC Realty and its co-plaintiffs in the action filed in D.C. Superior Court, 2010 CA 4571 (the Foreclosure Action). Although they ultimately were unsuccessful, the plaintiff(s) in the Foreclosure Action moved to block the foreclosure, and presented evidence and argument to two different Superior Court Judges. Even though they now claim an interest in the Development Land, Plaintiffs failed to join, intervene, or take any part in that lawsuit challenging the foreclosure. Nor do they allege anything that suggests that they objected, at the time, to the foreclosure sale that they now characterize as "grossly unfair." That Plaintiffs chose not to act in any way to protect their purported property interests, and did not avail themselves of opportunities to be heard, in no way renders these opportunities unconstitutionally deficient. *See Freeman v. F.D.I.C.*, 56 F.3d 1394, 1403-04 (D.C. Cir. 1995).

Because Plaintiffs have failed to state an actionable claim that their right to procedural due process has been violated, Count I should be dismissed.

### 2. Substantive Due Process

Plaintiffs also suggest a violation of their substantive due process rights, claiming "the procedures surrounding the foreclosure sale were instead rigged to favor the District" and were "presided over by the District without any concern with affording fairness and due process to interested parties." SAC ¶¶ 88, 89; FAC ¶¶ 78, 79. But Plaintiffs' complaints about the foreclosure sale, although fatally deficient, are more properly analyzed under procedural due process, thereby precluding a claim under "the more generalized notion of substantive due process." *Elkins v. District of Columbia*, 690 F.3d 554, 562 (D.C. Cir. 2012).

Moreover, Plaintiffs have failed to meet the high burden required to state a claim of a violation of their right to substantive due process. Absent a protected liberty or property interest, there can be no substantive due process violation. *George Washington Univ. v. District of*

*Columbia*, 318 F.3d 203, 206 (D.C. Cir. 2003) (*GWU*) (citing *Roth*, 408 U.S. at 569–70). There is no such interest here, as discussed in detail above.

Further, to state a claim under substantive due process, Plaintiffs must allege facts that, if true, constitute behavior that was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)). This Circuit has made it clear that substantive due process "normally imposes only very slight burdens on the government to justify its actions ...." *GWU*, 318 F.3d at 206. "Once a [constitutional] interest is found, however, the doctrine of substantive due process constrains only egregious government misconduct." *Id.* at 209 (citing *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) (doctrine prevents only "grave unfairness"), *cert. denied*, 488 U.S. 956 (1988)); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (*per curiam*). *Silverman* identified two ways by which a plaintiff might show such unfairness: "a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights . . . ." *Silverman*, 845 F.2d at 1080. *See also GWU*, 318 F.3d at 209 (quoting *Silverman*). Plaintiffs cannot meet either standard.

In this Circuit, a substantive due process claim is limited "to actions that in their totality are genuinely drastic." *Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997). *See also City of Cuyahoga Falls v. Buckeye Community Hope Found.*, 538 U.S. 188 (2003) (unanimous decision) ("[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998))). Plaintiffs' conclusory allegations simply do not meet the stringent threshold mandated by the law. *See, e.g., Decatur Liquors v. District of Columbia*, 478 F.3d 360, 363 (D.C. Cir. 2007) ("substantive due process constrains only egregious government misconduct");

*Wash. Teachers' Union v. Bd. of Educ. of the District of Columbia*, 109 F.3d 774, 781 (D.C. Cir. 1997) ("[S]ubstantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational [in that] it is not sufficiently keyed to any legitimate state interests.") (quoting *Comm. of United States Citizens Living in Nicar. v. Reagan*, 859 F.2d 929, 943–44 (D.C. Cir. 1988)). Plaintiffs "must at least show that state officials are guilty of grave unfairness, which requires demonstrating either a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights." *Elkins*, 690 F.3d at 562 (internal citations omitted).

The District's actions related to the foreclosure and post-foreclosure sale of assets do not even begin to approach the extreme level of behavior necessary to violate substantive due process. To be sure, Plaintiffs' claim that "the District was well aware, and acknowledged, via internal communications, that its foreclosure on the Development Land was wrongful and, indeed, legally inadvisable." SAC ¶ 81; FAC ¶ 71[14] but, being wrongful and inadvisable does not even suggest unlawfulness, let alone rise to the level of grave unfairness.

Further, even if the District was mistaken in believing it had the legal authority to do what it did, its mistake does not rise to the dramatic level of a violation of substantive due process. *Elkins*, 690 F.3d at 562 (holding that, although OAH found that District officials "dueled amongst themselves and sent out mixed messages, this at most shows agency confusion, not the 'grave unfairness' required for a substantive due process claim"). Indeed, the ruling by the Hon. Henry F. Greene, who denied CMC's and CMC Realty's motion for a temporary restraining order on the grounds that their challenge to the foreclosure was not likely to succeed,

---

[14] The District also notes that the email to which Plaintiffs refer does not say, and cannot reasonably interpreted to say, that the foreclosure was "legally inadvisable."

precludes such a showing as a matter of law. *See* Exh. 8 TRO Tr. at 86:2-18; 126:12-16; Ex. 9 *Fenty* PSJ Order. Based on that ruling, the District reasonably proceeded to foreclose with the understanding that any challenge to the Foreclosure lacked a likelihood of success on the merits. In relying on this judicial ruling in advance of the foreclosure and during the foreclosure sale, any alleged misconduct by the District cannot possibly rise to the level of egregiousness that is necessary to state a claim for a violation of substantive due process – and indeed, Plaintiffs have not so alleged.

As to the claim of an allegedly "unfair" foreclosure sale, Plaintiffs have identified no law the District "substantially infringed" or "deliberately flouted," nor do they allege that "personal or group animus" motivated the District to structure the foreclosure sale as it did. The District's attempt to conduct a foreclosure sale in a manner that ensured only those bidders who were capable of operating the only hospital in the District of Columbia east of the Anacostia River with some likelihood of success is, in no way, analogous to the torture of prisoners, and in no way rises to the level of egregious government misconduct necessary to support a claim for a violation of substantive due process. *See Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 363 (D.C. Cir 2007).

Plaintiffs have failed to state a substantive due process claim and Count I should be dismissed against the District.

**B.**   **Plaintiffs Have Failed To State A Takings Claim Because They Had No Property Interest In The Development Land And The District Enforced Its Rights Against CMC And CMC Realty Under The Loan Documents Through The Foreclosure (Count II)**

A party challenging government action as an unconstitutional taking bears a "substantial burden." *District Intown Properties L.P. v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999) (quoting *Eastern Enterprises v. Apfel*, 524 U.S. 498, 523 (1998)), *cert. denied*, 531 U.S.

812 (2000). Here, as discussed in detail above, Plaintiffs do not have a property interest that could trigger a Takings claim. *See Full Value Advisors, LLC v. S.E.C.*, 633 F.3d 1101, 1109 (D.C. Cir. 2011); *Mobile Relay Assocs. v. F.C.C.*, 457 F.3d 1, 12 (D.C. Cir. 2006).

But even if the Court were to disregard the determination by the D.C. Court of Appeals and the showing above, at 12-19,  that Plaintiffs had no property interest in the Development Land at the time of the Foreclosure, the Takings Clause is not designed to prevent government interference with property rights, "but rather to secure compensation in the event of an otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 535 (2005) (quoting *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 314–15 (1987)). There are essentially two types of takings, physical takings and regulatory takings. *Brown v. Legal Found. of Washington*, 538 U.S. 216, 233 (2003). The government may physically acquire private property, through a condemnation proceeding or an outright physical appropriation. *Id.* (citing, *inter alia, Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)). The government may also, through regulation, prohibit certain uses of a portion of an owner's property. *Id.* (citing, *inter alia, Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1965), and *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)). "The first category of cases requires courts to apply a clear rule; the second necessarily entails complex factual assessments of the purposes and economic effects of government actions." *Yee v. Escondido*, 503 U.S. 519, 523 (1992). Plaintiffs claim that the District's "actions in connection with the foreclosure . . . would amount to a classic uncompensated taking – whether *per se*, regulatory, or contractual in nature."[15] Dkt No. 33, ¶ 87. But Plaintiffs have alleged nothing that

---

[15] Plaintiffs do not explain what they mean by a supposed "contractual" taking, whether they claim the District "took" a contractual right from them or that the "taking" was affected by some unidentified contract. Having failed to identify any element of a "contractual taking" to which the District can respond, they necessarily have failed to state a claim for such a taking.

suggests the actions about which they now complain, *i.e.* the foreclosure, constitutes an unconstitutional "taking" for which compensation is owed.

### 1. Plaintiffs Cannot State A Takings Claim Absent An Existing Property Interest

Plaintiffs did not own the Development Land at the time of the foreclosure they now claim constituted a "taking," *UMC Dev.,* 2015 WL 4113371, at *5; Trial Ct. Order at 6, despite their unsupported allegations to the contrary, *see* SAC ¶¶ 5, 6, 49, 91, 96, 140-43; FAC  ¶¶ 2-4, 34, 36, 60, 81, 84, 126. Therefore, they cannot state a Takings claim, which "are predicated on a deprivation of an *existing* property interest." *Bowen v. Pub. Agencies Opposed to Social Sec. Entrapment*, 477 U.S. 41, 55-56 (1986) (emphasis added). *See also Foggy Bottom Ass'n v. District of Columbia Office of Consumer and Regulatory Affairs*, 441 F. Supp. 2d 84, 89 (D.D.C. 2006) (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. at 125); *Palazzolo v. Rhode Island*, 533 U.S. 606, 628-29 (2001) (holding that a purchaser who takes title to property *after* the act that allegedly constitutes a taking may have standing to pursue a Takings claim). As discussed above, Plaintiffs did not have an ownership interest, or any existing property interest, in the Development Land at the time of the foreclosure. Therefore, they now cannot state an actionable Takings claim based upon the Foreclosure.

### 2. The Foreclosure Was Not A "Taking"

Even if Plaintiffs could state a takings claim without owning the land at issue, they have failed to state a claim for a physical taking, notwithstanding their assertion that the foreclosure is a "classic *per se* taking." SAC ¶ 99; FAC ¶ 87. In foreclosing upon the Hospital, the District exercised its rights as a creditor. It did not "physically take[] possession of an interest in property for some public purpose . . . . [or] occup[y] the property for its own purposes." *Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002).

Indeed, the foreclosure simply was not a "taking" under the Fifth Amendment. The government is not required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain. *Bennis v. Michigan*, 516 U.S. 442, 452-53 (1996). The foreclosure took place pursuant to the District's authority under the Deed of Trust, "not its power of eminent domain, its regulatory power, or any other power enabling it to take or encumber private property for a public purpose." *See Speed v. Mills*, 919 F.Supp.2d 122, 129 (D.D.C. 2013) (holding that deprivation of plaintiff's title to land through tax sale was not a "taking").[16]

Rather, the Supreme Court has explained, "[t]he Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 (1960). The Development Land was foreclosed to the detriment of CMC and CMC Realty because they had defaulted on their obligations under the Notes and the Deed of Trust, and it was auctioned. For this reason, Plaintiffs do not have a takings claim under the Fifth Amendment. *Speed,* 919 F. Supp.2d at 129.

Nor did the foreclosure "interfere in any way with the present uses of the property," as the Hospital continued operating as a hospital after the foreclosure. *District Intown Properties Ltd. v. P'ship v. District of Columbia*, 23 F.Supp.2d 30, 38 (D.D.C. 1998), *aff'd*, 198 F.3d 874 (D.C. Cir. 1999). By foreclosing upon the Hospital, the District did not "take" property for use

---

[16] *See also Indus. Bank of Washington v. Sheve,* 307 F. Supp. 98, 99 (D.D.C.1969)("[a] tax sale is not a government taking for which just compensation must be paid under the Constitution after judicial proceedings"); *Sol–G Const. Corp. v. United States,* 231 Ct.Cl. 846 (1982)(finding in foreclosure case that "[p]laintiff's loss is the kind of consequential injury which results from lawful Government action, and does not entitle it to compensation as a Fifth Amendment taking"); *Golden v. Mercer Cty. Tax Claim Bureau* (*In re Golden*), 190 B.R. 52, 57 (Bankr.W.D.Penn.1995)("In a tax sale context, the takings clause is not dispositive nor the appropriate basis for starting an inquiry.... The purpose of tax sales is not to strip the taxpayer of his property, but to [e]nsure the collection of taxes.").

by the public as contemplated by the Fifth Amendment. Rather, the foreclosure was a consequence of the District's lawful enforcement of its security interest in that property, and does not entitle a plaintiff to compensation as a Fifth Amendment taking. *Speed*, 919 F.Supp.2d at 122.

### 3.   The Foreclosure Was Certainly Not A Regulatory Taking

Plaintiffs also have failed to allege facts that support a claim of regulatory taking. The foreclosure was not an "acquisition[] of resources to permit or facilitate uniquely public functions." *Penn Central*, 438 U.S. at 128 (discussing *United States v. Causby,* 328 U.S. 256 (1946), in which the establishment of flight paths over property precluded the present use of the land). The U.S. Supreme Court first recognized in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393 (1922), that "government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster-and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle v. Chevron USA, Inc.*, 544 U.S. 528, 537 (2005). In *Mahon*, Justice Holmes stated the test by which a regulatory taking may be identified: "[t]he general rule at least is that while property may be regulated to a certain extent, *if regulation goes too far it will be recognized as a taking*." 260 U.S. at 415 (emphasis added); *see also Committee for Reasonable Regulation of Lake Tahoe v. Tahoe Regional Planning Agency*, 365 F.Supp.2d 1146, 1160 (D.Nev. 2005) (same).

But the action about which Plaintiffs complain, the foreclosure, is not regulatory. Nowhere in the Complaint do Plaintiffs identify either a regulation or a regulatory process by which the supposed "taking" was effected. Indeed, the foreclosure did not limit the possible uses of the Development Land in any way. And, as shown above, at 16-19, claimants cannot establish a takings claim "simply by showing that they were denied the ability to exploit a property

interest that they heretofore had believed was available for development." *District Intown*, 198 F.3d at 879 (quoting *Penn Central*, 438 U.S. at 130). Plaintiffs' allegations are inadequate to support an inference that they had any *reasonable* investment backed expectations regarding the property.

Finally, Plaintiffs concede that the District foreclosed upon the Hospital to prevent its insolvency, which would have imperiled the wellbeing of the residents of the District east of the Anacostia River. *See, e.g.,* SAC ¶ 57; FAC ¶ 49 ("Contrary to the rosy account offered in SHA's November 20, 2009 letter, however, SHA was running in to trouble and trying to cover it up"); SAC ¶ 58; FAC ¶ 50 ("By January 2010, the Hospital needed money to pay its bills and keep its doors open."); SAC ¶ 59; FAC ¶ 51 ("On January 21, 2010 SHA reported a fiscal 2009 pre-tax loss for the Hospital of $10.5 million."); SAC ¶ 62; FAC ¶ 54 ("The Hospital's financial condition nonetheless continued to deteriorate and on March 11, 2010, the Hospital ran out of money to pay for basic supplies."). Taking action to prevent the collapse of the only hospital in the District of Columbia east of the Anacostia River is the type of action that, even if it involves a physical or regulatory taking of private property, does not require compensation. *Lucas v. South Carolina Costal Council*, 505 U.S. 1003, 1040 (1992) (noting that "[t]he Court consistently has upheld regulations imposed to arrest a significant threat to the common welfare, whatever their economic effect on the owner.").

Plaintiffs have alleged nothing that suggests the foreclosure constituted a taking for which compensation is owed to them. Accordingly, Count II should be dismissed.

### C.  The Plaintiffs' Wrongful Foreclosure Claim Based On Legal Conclusions Is Defeated By Rulings Of The D.C. Superior Court (Count III)

In SAC Count III, Plaintiffs claim that the General Partner "has never effectively withdrawn or been removed from GSI, nor has the GSI partnership ever been dissolved or

amended so as to transfer control of GSI from the general partner (SHW-GSE) to the Limited Partner." (SAC ¶ 76; FAC, ¶ 66). Plaintiffs therefore claim that the District's foreclosure upon the Hospital and Development Land was unlawful, and deprived Plaintiffs of their "rightful property interests" in the Development Land. (SAC ¶ 109)

Plaintiffs have failed to set forth any factual allegations that support their conclusory legal assertions that the District's foreclosure was wrongful, or that the Partnership remained in the control of its General Partner at the time of the foreclosure. Indeed, the Complaint is conspicuously silent as to the actual status of the Partnership at the time of the foreclosure.

Plaintiffs also conclusorily assert that the foreclosure and foreclosure auction were flawed by "unfair procedures and due process deprivations." (SAC ¶ 90; FAC ¶ 80.) But Plaintiffs cite no statute or common law principle under which this would be actionable, or allege any factual allegations that would support this claim. Plaintiffs therefore have not set forth a "facially plausible" claim setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). *See also Robinson v. Deutsche Bank Nat. Trust Co.,* 932 F.Supp.2d 95, 105 (D.D.C. 2013) (finding that the plaintiff "has not provided any facts . . . to support his conclusory allegation that [the previous holder of the note] may not have had the power to convey mortgage notes to the trust [and] therefore, this argument also fails to plausibly allege that the foreclosure notice was deficient . . . ").

Indeed, and as previously discussed above, the actual terms of the Partnership Agreement contradict Plaintiffs' unsupported legal conclusions that, "[a]s the limited partner of GSI, the District had no independent authority to declare a default or to effectuate a foreclosure." (SAC ¶ 28; FAC ¶ 26.) If and when the General Partner was to withdraw from the Partnership, the

partnership would be dissolved and its affairs wound up unless the District, as the Limited Partner, decided to appoint a new General Partner.[17] (Exh. 2, Art 8.1-8.2.) If the District did not appoint a new General Partner and GSI therefore was dissolved, any enforcement rights against CMC Realty and CMC Medical were assigned to the District, and the District could proceed with any enforcement against CMC Realty and CMC Medical. (*Id.*, Art. 8.3.) Although Plaintiffs do their best to ignore what are for them inconvenient facts, SHW-GSE had, in fact, stated its express intent to withdraw from the Partnership, and the District had consented, by that time, as reflected by Judge Greene's Order denying of the CMCs' TRO motion (Exh. 7) and that Court's findings supporting the denial (*see* Exh. 8, TRO Tr. at 86:2-18; 126:12-16.)

Moreover, Plaintiffs' allegation that they were harmed by the foreclosure "by purporting to extinguish all rights and investment returns otherwise associated with the rightful ownership of the Development Land," SAC ¶ 108, is fatally contradicted by their concessions elsewhere in the Complaint that the District never approved the transfer of the Development Land to them, (SAC ¶ 51; FAC ¶ 42). As discussed above, Plaintiffs had no actual property interest in the Development Land at the time of the foreclosure, and neither SHW-GSE nor CMC Realty ever had the authority to convey the Development Land or encumbrance rights to Plaintiffs. Thus, Plaintiffs did not have property rights or cognizable expectations of investment returns to be extinguished at the time of the foreclosure.

For these reasons, even taking Plaintiffs' factual allegations as true for the purposes of this motion, Plaintiffs have not alleged facts that would demonstrate that the District lacked the

---

[17] Plaintiffs have incorporated the Operating Agreement into their Complaint, which permits the Court to consider the language of that document without converting the District's motion to dismiss into a motion for summary judgment. *Nat'l Sec. Counselors* , 2013 WL 1141768, at *18 n. 14. Plaintiffs also rely on allegations attributed to plaintiffs in *CMC Realty, LLC v. District of Columbia*, 2010 CA 004571, (SAC ¶ 77; FAC ¶ 67). The *CMC Realty* plaintiffs' contentions were tested in an evidentiary hearing before Judge Henry Greene, and found wanting. (Exh.s 7 & 8).

authority to foreclose upon the Hospital and the Development Land. They therefore have failed to state a claim for wrongful foreclosure, and Count III should be dismissed as to the District.

### D. Plaintiffs Have Failed To Allege Facts That, If True, Would Entitle Them To The Equitable Relief Of Specific Performance Of The Operating Agreement (Count II) Or A Constructive Trust (Count IX)

As demonstrated in this motion, Plaintiffs have failed to allege facts that, if true, demonstrate that they were the "rightful owners" of the Development Land at any time, including the date of the foreclosure. Nevertheless, Plaintiffs request that the Court "reinstate their interest as the rightful owner" and "order the holder of title of the Development Land to transfer title to [Plaintiffs] as originally contemplated by the Operating Agreement and agreed to by the District." (SAC ¶ 116). They further claim that, given their "established rights to the Land as rightful owner, the District and NFPH have effectively occupied, used, and otherwise operated the Development Land in constructive trust" for Plaintiffs. (SAC ¶149.) However, these request for relief do not withstand scrutiny.

#### 1. Plaintiffs Cannot Seek Equitable Relief While Simultaneously Claiming They Are Entitled To Fully Adequate Remedies At Law

Under District of Columbia law, "[i]t is axiomatic" that equitable relief will not be granted where the plaintiff has a complete and adequate remedy at law. *Dist. of Columbia v. Wical Ltd. P'ship,* 630 A.2d 174, 184 (D.C.1993) (quoting *Marshall v. Dist. of Columbia,* 458 A.2d 28, 29 (D.C.1982) ("We note that it is axiomatic that equity has no jurisdiction over a controversy for which there is a complete and adequate remedy at law. *Chavin v. H.H. Rosin & Co.,* 246 A.2d 921, 922 (Del.1968).")). *See also Eastern States Petroleum Corp. v. Rogers*, 280 F.2d 611, 613 (D.C. Cir. 1960). This maxim applies to an equitable claim for a constructive trust. *Sabre Intern. Sec. v. Torres Advances Enter.*, 820 F.Supp.2d 62, 77 (D.D.C. 2011).

Plaintiff bears the burden of establishing its right to pursue equitable remedies, including demonstrating that an award of damages fails to provide adequate relief. *Kakaes v. George Washington Univ.*, 790 A.2d 581, 583 (D.C. 2002). It is incumbent upon the Court to require a justification for an award of equitable relief against the District, such as is sought here. *See Wical,* 630 A.2d at 184 (reversing issuance of injunction because "under these circumstances, there was no justification for an award of equitable relief. The judge, in effect, issued an injunction requiring the issuance of the permit without giving any apparent consideration to the availability of a legal remedy.").

Plaintiffs' bald assertion that they lack an adequate remedy at law is inadequate to trigger this Court's equity jurisdiction. *Kakaes*, 790 A.2d at 829. ("Dr. Kakaes has not shown why damages would not provide him with full and complete relief . . . ."). Although the *factual* allegations in the Amended Complaint must be taken as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasain*, 478 U.S. at 286; *see also Iqbal*, 566 U.S. at 678. In Count IV, seeking specific performance, Plaintiffs merely parrot the legal standard that they have no adequate remedy at law. (SAC ¶ 115.) They do not even attempt to allege facts demonstrating that they lack an adequate remedy at law in Count VIII, seeking a constructive trust. In fact, to the contrary, in ¶ 143 of Count VIII, Plaintiffs allege that "[t]he District's and NFPH's deprivation of the Developers' interest  as rightful owners of the Development Landis the proximate cause of additional compensatory damages." which, of course can be remedied through an award of compensatory damages. *See also* Counts I, Due Process, and II, Takings, VII, Unjust Enrichment, and IX, *Quantum Meruit*.) Plaintiffs offer no *factual* allegations to show that the damages they claim for profits lost due to the effects of the foreclosure are inadequate remedies.

50

*Wical Ltd P'ship* reflects a plaintiff seeking injunctive must satisfy a substantial to show that it lacks an adequate remedy at law, even where the plaintiff seeks relief because the government has and is interfering with its rights to develop its own real property. 630 A.2d at 184.   In *Wical Ltd P'ship,* the plaintiff was a housing developer who had been denied a building permit, and thus prevented from developing certain real property he owned. The trial court granted partial summary judgment to the developer on his claim against the District, and ordered the District to issue the building permit. The Court of Appeals reversed the trial court because "there was no justification for an award of equitable relief." *Id.* at 184. The Court of Appeals explained that, "assuming, without deciding that the District has indeed acted in violation of Wical's rights, Wical has an obvious remedy at law. It may sue the District for damages. Indeed, Wical has done so in this very case, to the tune of $3,500,000." *Id.* at 184.

This case requires the same disposition – denial of any equitable relief. In each of Counts I-III, V-VII, and IX, Plaintiffs seek compensatory damages to recover the economic value of their supposed right to develop the Development Land, or the financial value of their bargain with SHA and CMC Realty. Although the District vigorously disputes that Plaintiffs have stated any actionable claims in these Counts, or that they can prevail on their claims even if they have satisfied the requirements of Rule 8(a), damages would be an adequate remedy on these claims. *Id*., at 185 (citing *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1016 (1984), and *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 315 (1987), for the proposition that equitable relief is unavailable even where government "takes" the property at issue). The Court should dismiss these Counts and any claim to equitable relief because of the availability of a concededly adequate remedy at law.

**2.  The District May Not Be Subject To Orders Directing The Conveyance Of District Real Estate For The Benefit Of Private Litigants**

Not satisfied to recover such damages as may be awarded, Plaintiffs ask that this Court "require[e] the holder of title to the Development Land to transfer such title as contemplated by the Operating Agreement." (SAC ¶ 151.) In doing so, Plaintiffs ask the Court to convey to them specific property and equipment being used by an instrumentality of the government to serve the people of the District,[18] and blatantly ignore judicial precedent that bars this relief.

A court-imposed constructive trust is a seizure of the assets subjected to the constructive trust. *See Ridgway v. Ridgway*, 454 U.S. 46, 58 (1981) (holding that court's imposition of constructive trust on insurance proceeds of policy Servicemen's Group Life Insurance Act constituted "seizure" of those proceeds in violation of the anti-attachment provision of SGLIA) (citing *Wissner v. Wissner*, 338 U.S. 655, 659 (1950))). A grant of specific performance is also a seizure. *See Leggett v. Rose,* 776 F. Supp. 229, 236 (E.D.N.C. 1991) (citation omitted) (court in equity providing specific performance will do so by "by seizing the property which is the subject matter of the agreement, and fastening a trust on it in favor of the person" entitled to relief). In Counts IV and VIII, Plaintiffs seek, by means of constructive trusts or through specific performance, to accomplish the judicial transfer or conveyance of the Development Land from

---

[18]  The Not-For-Profit Hospital Corporation was established by the Not-For-Profit Hospital Corporation Establishment Emergency Amendment Act of 2010, D.C. Act 18-476. The primary purpose of the Not-For-Profit Hospital Corporation is to:  "(1) receive the land, improvements on the land, equipment, and other assets of the United Medical Center; (2) operate and take all actions to ensure the continued operation of the hospital; and (3) sell or otherwise transfer all or part of the hospital and site, if a qualified buyer is identified." D.C. OFFICIAL CODE § 44-951.02(b). This statute does not require transfer of the Hospital's assets to the Not-For-Profit Hospital Corporation, however. Rather, "[u]pon foreclosure under the Deed of Trust, Security Agreement, Fixture Filing and Restrictive Covenants …the Mayor [of the District of Columbia] is authorized to transfer all of assets, including cash, accounts receivable, and real and personal property, of United Medical Center to the Corporation." D.C. OFFICIAL CODE § 44-951.07. While the Not-For-Profit Hospital Corporation possesses and operates the Hospital, the District retains title to the real estate.

the District to the Developers to satisfy their claims for profits they believe they would have made from developing the Development Land.

The District, unlike individuals or private entities, is not subject to remedies that seize its property in satisfaction of a judgment. *See, e.g., Ex Parte New York,* 256 U.S. 503, 511 (1921) (holding that "it is uniformly held in this country that even in the case of municipal corporations, …, their property and revenue necessary for the exercise of those powers are to be considered as part of the machinery of government exempt from seizure and sale under process against the city."); *Klein v. New Orleans,* 99 U.S. 149, 150 (1878) ("To permit a creditor to seize and sell [parcels of land belonging to the city] to collect his debt would be to permit him in some degree to destroy the government itself." ); *Grunley Constr. v. Dist. of Columbia*, 704 A.2d 288, 293 (D.C. 1997); *Columbia Brick, Co. v. Dist. of Columbia,* 1 App. D.C. 351, 356-57 (1893). Therefore, accepting Plaintiffs' allegations as true and even viewing them as the rightful owners of the Development Land, Supreme Court precedent prevents Plaintiffs from pursuing the equitable relief set forth in Counts IV and VIII. *Ex Parte New York*, 256 U.S. at 511: *Klein v. City of New Orleans*, 99 U.S. at 150.

### 3.   Plaintiffs Are Not Entitled To Specific Performance Of A Contract They Were Not Ready, Willing, And Able To Perform

Plaintiffs also profess a willingness and ability to perform their obligations under the Operating Agreement. (SAC ¶ 113) Their supposed willingness and ability to perform does not change that a condition precedent to the fulfillment of the Operating Agreement, the District's consent to the transfer of the Development Land to UMC Development, remained unfulfilled (SAC ¶ 51; FAC ¶ 42) Without this approval, performance of the Operating Agreement is impossible. And Plaintiffs cannot obtain specific performance of the Operating Agreement. *See Bear Dev., LLC v. City of Kenosha*, 822 F.Supp.2d 865, 873 (E.D. Wis. 2011) (acknowledging

that specific performance should not be ordered if "the circumstances would make it unfair, unreasonable, or impossible."). Specific performance "will be refused where the performance of the contract requires action by a designated authority and there is no showing that such action can be obtained." *Villa Corp. v. S.C.*, 187 F.2d 493, 495 (3rd Cir. 1951).

Indeed, specific performance of the Operating Agreement and a transfer of the Development Land to UMC Development would require the Court to order the District to act, *i.e.* approve the transfer of the Development Land to UMC Development. Neither the Operating Agreement - to which the District is not a party – nor any agreement to which the District is a party requires the District to grant this approval. *See UMC Dev.,* 2015 WL 4113371, at *5. The District cannot be ordered to provide specific performance of an agreement to which it is not a party. *Reilly v. Cullinane*, 53 App.D.C. 17 (D.C. Cir. 1923) (refusing to award specific performance of a contract and finding that a non-party to a contract "cannot be forced by judicial decree to part with her dower right in order to fulfill a contractual obligation incurred by her husband without her consent"). Specifically, the District cannot be ordered to consent to the transfer of the Development Land. *See UMC Dev.,* 2015 WL 4113371, at *5; Trial Ct. Order at 5-6.

For these reasons, Plaintiffs' Counts IV and VIII should be dismissed as to the District.

### E.   The Foreclosure Did Not Interfere, Tortiously Or Otherwise, With Plaintiffs' Prospective Business Advantage (Count III)

The elements of tortious interference are:  "(1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages." *Onyeoziri v. Spivok,* 44 A.2d 279, 286 (D.C. 2012) (citations omitted). A defendant may avoid liability by "establish[ing] that his conduct was legally justified or privileged," such as action taken "to

protect a present, existing economic interest." *Id.*, at 287 (citations and internal quotes omitted). Here, Plaintiffs have failed to allege the necessary elements of a claim for tortious interference with a business expectancy.

First, Plaintiffs fail to allege that their anticipation of alleged business expectancy was "commercially reasonable." *Browning*, 292 F.3d at 243; *see also Marshall v. Allison*, 908 F.Supp.2d 186, 203 (D.D.C. 2012) (finding a lack of evidence supporting the claim that an on-going economic relationship as plaintiff allegedly expected "was actually probable"). Plaintiffs concede that the District did not authorize transfer of the Development Land to them. (SAC ¶ 51; FAC ¶ 42.) Thus, as discussed above, CMC Realty lacked the authority to convey the Development Land to Plaintiffs. In turn, any expectancy of an economic advantage held by Plaintiffs at the time of the foreclosure in July 2010 cannot, as a matter of law, have been commercially reasonable. *See also Impark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F.Supp.2d 141, 165 (D.D.C. 2010) (finding that the plaintiff's "allegation that it cultivated business relationships with businesses is devoid of any factual content that would allow this Court to reasonably infer that IMARK had prospective transactions with these businesses.") (internal quotations omitted); *see also District Intown,* 198 F.3d at 879.

Second, Plaintiffs also have failed to allege facts supporting their claim that the District's foreclosure "caus[ed] CMC Realty and SHW-GSE to breach contractual obligations with the Developers," (SAC ¶ 122), thereby damaging Plaintiffs' prospective economic advantage. Absent written consent from the District, CMC Realty and/or SHW-GSE had no legal authority to convey the Development Land to UMC Development; such written consent therefore was a condition precedent to performance of the Operating Agreement. As this condition precedent was never satisfied, performance under the contract - conveyance of the Development Land - had

not come due. The foreclosure therefore could not have caused CMC Realty and SHW-SGE to breach as-yet-undue contractual obligations. *See UMC Dev.*, 2015 WL 4113371, at *5; *see also Psaromatis v. English Holdings I, LLC,* 944 A.2d 472, 485 (D.C. 2008) . *See also Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F.Supp.2d 287, 293 (D.D.C. 2005).

Therefore, Plaintiffs have failed to state a claim against the District for tortious interference with their prospective economic advantage, and Count III should be dismissed.

## F.  Plaintiffs Have Not Stated A Claim For Breach Of Contract (Count IV)

Plaintiffs assert a breach of contract claim, contending that they were third party beneficiaries of the Partnership Agreement (SAC ¶¶ 124-31; FAC ¶¶ 101-08). "Under general contract principles, a third party beneficiary of a contract may bring an action against the principal parties to that contract only when the parties to the contract intended to create and did create enforceable contract rights in the third party." *Corporate Systems Resources v. Washington Metropolitan Area Transit Authority*, 31 F. Supp.3d 124, 162 (D.D.C. 2014) (*CRS*) (citing *Beckett v. Air Line Pilots Assoc.,* 995 F.2d 280, 286 (D.C. Cir. 1993); *Flexfab, L.L.C. v. United States,* 424 F.3d 1254, 1263 (Fed.Cir. 2005)). Further, "[t]hird-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly the party claiming such status." *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008) (quoting *Alpine Cnty., California v. United States*, 417 F.3d 1366, 1368 (Fed. Cir. 2005)) (internal quotation marks omitted). "[A]n indirect interest in the performance of the undertakings is insufficient." *Id.* (internal quotation marks and citation omitted); *see also Moore v. Gaither*, 767 A.2d 278, 287 (D.C. 2001) ("The courts have recognized the basic contract principle that third party beneficiaries of a Government contract are generally assumed to be merely *incidental* beneficiaries, and may not enforce the contract absent clear intent to the

contrary.") (internal quotation marks and citation omitted) (emphasis in original). Rather, and critically, even where a plaintiff has "plead the necessary elements to be considered a proper third-party beneficiary, it c[an] only sue to *enforce the provisions of the agreement.*" *Cambridge Holdings Group, Inc. v Federal Insurance Co.,* 357 F. Supp.2d 89, 95  (D.D.C. 2004) (citing *Western Union Telegraph Co.,* 402 A.2d at 1277; *see also Trans Bay Engineers and Builders, Inc. v. Hills,* 551 F.2d 370, 378 (D.C.Cir.1976)), *aff'd* 489 F.3d 1356 (D.C. Cir. 2007) (emphasis in original).

Plaintiffs' breach of contract claim fails because the SAC does not allege that the Partnership Agreement provided for the Developers to develop, much less own, the development Land. *See generally*, SAC. Rather, the SAC offers the legal conclusion, that "[t]he Partnership Agreements and exhibits appended thereto contemplated the development of the Development Land." SAC ¶ 126. Thus, the Developers do not even assert that, if the Court were to wade through those documents in search of some unspecified provision, it would find any promise by either the District or SHW-GSE to develop the Development Land - much less a commitment to employ or even allow Plaintiffs to do so. Plaintiffs' assertion that "both the District and SHW-GSE understood and agreed that the Developers would be the developers of the development Land," (SAC ¶ 127) cannot salvage Count VI. Plaintiffs, quite properly do not even aver that such an understanding is stated in the Partnership Agreement, or even in any amendment to it. Conversely, the Partnership Agreement expressly states that it is an integrated agreement supersed[ing] any prior agreement or understandings among [the District and SHW-GSE], oral or written all of which are [t]hereby cancelled." Partnership Agreement (Exh. 4), ¶ 10.5.

Thus, the SAC's *factual* allegations, accepted as true and read most favorably to Plaintiffs simply do *not* reflect (1) an obligation or duty to develop the Development Land

arising out of the Partnership Agreement (or any other contract to which the District was a party at the time of the foreclosure); (2) of which the District and SHW-GSE intended Plaintiffs to be direct beneficiaries, or (3) a breach of that duty. *See Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (defining elements of breach of contract claim) (internal citation omitted); *see also Dean v. Walker*, 876 F. Supp. 2d 10, 13 (D.D.C. 2012) (same); *Fort Lincoln Civic Ass'n,* 944 A.2d at 1064.

Hence, this claim is governed by the rule regarding contract claims by non-parties to the agreements:  "Generally, a stranger to a contract may not bring a claim on the contract." *Fort Lincoln Civic Ass'n.*, 944 A.2d at 1064 (citing *German Alliance Ins. Co. v. Home Water Supply Co.,* 226 U.S. 220, 230 (1912) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least show that it was intended for his direct benefit.")). Plaintiffs make no such showing. Therefore, Count VI would be futile.

### G. Any Unjust Enrichment (Count VII) And/Or *Quantum Meruit* (Count X) Claims Are Timed-Barred

As explained above, at 31-32, Plaintiffs' unjust enrichments and *quantum meruit* claims lapsed no later than December 31, 2012.

### Conclusion

For the reasons stated above, this Court should deny Plaintiffs' Motion For Leave To File Second Amended Complaint and dismiss the First Amended Complaint in its entirety.

September 29, 2015                         Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Acting Deputy Attorney General

58

Public Interest Division

*/s/ Toni Michelle Jackson*
TONI MICHELLE JACKSON, Bar Number 453765
Chief, Equity Section

/s/   *Thomas L. Koger*
THOMAS L. KOGER, D.C. Bar No. 427921
Senior Assistant Attorney General
Office of the Attorney General for the District of Columbia
441 Fourth Street, N.W., Suite 630 South
Washington, D.C.  20001
Tel: (202) 727-4170
Fax: (202) 715-7725
Email: thomas.koger@dc.gov

*Counsel for Defendants District of Columbia and Mayor Muriel Bowser, sued solely in her official capacity*