**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UMC DEVELOPMENT, LLC, *et al.*,<br><br>  Plaintiffs<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>  Defendants | Case No. 1:13-cv-00899 (GK) |

**DEFENDANT NOT-FOR-PROFIT HOSPITAL CORPORATION'S**
**REPLY MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION**
**TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**Introduction**

This Reply Memorandum addresses the principal contentions of the Plaintiffs' Consolidated Reply In Support Of Motion For Leave To File Second Amended Complaint and Opposition To The Defendant's Motion To Dismiss ("Plaintiffs' Memo"), but only insofar as such contentions relate to Not-For-Profit Hospital Corporation ("NFPHC") and are not directed primarily or solely at the District of Columbia ("District") and its legal positions. The mere fact that NFPHC has chosen in this Reply Memorandum not to address each and every issue raised by the Plaintiffs is by no means intended as a concession as to any issues not discussed in this memorandum. To the contrary, where such issue has not been addressed, NFPHC either views that issue as one involving only the District or as one where NFPHC adopts the District's position in the DC Memo and in the District's own Reply Memorandum filed simultaneously herewith.

**ARGUMENT**

I. **THE NOTICE PROVISION IN DC CODE § 44-951.14(d) HAS BEEN IN EFFECT SINCE JULY 2010 AND NON-COMPLIANCE WITH IT BARS PLAINTIFFS' NON-FEDERAL DAMAGE CLAIMS ON SOVEREIGN IMMUNITY GROUNDS**

At page 25-26 of NFPHC's underlying Memo ("NFPHC Memo"), NFPHC asserts that Plaintiffs' damage claims under state law are barred by NFPHC's sovereign immunity insofar as the statutory notice required to be given by the Plaintiffs to NFPHC's CEO was not given. *Id.* In the Plaintiffs' Memo this argument is given short shrift at page 33, n.11. Plaintiffs dismiss the issue by asserting that DC Code § 44-951.14, which is the statutory basis for this notice requirement was "only enacted on September 14, 2011." *Id.* Plaintiffs' assertion as to when the six (6) month written notice requirement ("NFPHC Notice") became law is entirely erroneous. The NFPHC Notice has been law in the District of Columbia since July 2010. Attached hereto as Exhibit A is a true copy of the enrolled original Act of the Council of the District of Columbia ("DC Council") entitled Not-For-Profit Hospital Corporation Establishment Emergency Amendment Act of 2010 ("NFPHC Emergency Act"). At page 9 of Exhibit A in Section 114(d), the DC Council provided as follows:

> "An action other than an action for medical negligence or malpractice may not be maintained against the Corporation for unliquidated damages to persons or property unless, within 6 months after the injury or damage was sustained, the claimant, his agent or attorney has to give notice in writing to the CEO of the approximate time, place, cause and circumstance of the injury or damage."

*Id.*

The above-quoted Section 114(d) is identical to the NFPHC Notice requirement which is presently codified at D.C. Code § 44.951.14(d). What Plaintiffs fail to realize is that the NFPHC Notice along with the entire NFPHC Emergency Act became law as an emergency action of the DC Council *effective July 7, 2010.* Attached hereto as Exhibit B, is a copy of a September 21, 2010 DC Council resolution which states that the NFPHC Emergency Act was enacted in July

2010 and as temporary legislation, it was signed by the Mayor on August 3, 2010.  Plaintiffs' contention that the NFPHC Notice was only enacted in September 2011 is false.[1]  NFPHC's sovereign immunity from suit for unliquidated damages under District law remains intact, where, as here the Plaintiffs undisputedly failed to give the NFPHC Notice.

## II. PLAINTIFFS' STATE LAW CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiffs' Memo goes to great lengths to try to convince this Court that all of its claims are timely filed.  *See* Plaintiffs' Memo p. 38-41.  For the reasons stated below, Plaintiffs' state law claims are untimely.

Plaintiffs' principal contention is that the state law claims are timely under the "relation back" principle of Fed. R. Civ. P. 15(c).  *See* Plaintiffs' Memo, p. 38.  Plaintiffs' "relation back" argument is constructed on the false premise that for the "relation back" principle to apply all a plaintiff needs to show is that the defendant had prior "adequate notice of the claim presented in the amendment," and that the dismissal of the state law claims by the Superior Court has no effect whatsoever on the tolling of the applicable statute of limitations.  *Id.*[2]

The "relation back" doctrine has no application where one or both of the following circumstances exist as they do here:

---

[1] What was enacted effective September 14, 2011 is the current non-emergency codification of the NFPHC Emergency Act.  The entire NFPHC Notice has been part of the NFPHC Emergency Act from its very inception.  The factual reality that the NFPHC Emergency Act was enacted and became law prior to the July 9, 2010 ("Foreclosure") is beyond any dispute.  *See, e.g., Sodexo Operations, LLC v. Not-For-Profit Hospital Corp.,* 930 F. Supp. 2d 234, 240 (D.D.C. 2013); *Direct Supply, Inc. v. Specialty Hospitals of America, LLC,* 878 F. Supp. 2d 13, 17 (D.D.C. 2012) (appeal pending).

[2] The two cases cited in support of Plaintiffs' "relation back" argument, *Marshall v. Honeywell Tech Solutions, Inc.,* 536 F. Supp. 2d 59, 67 (D.D.C. 2008) and *Philogene v. District of Columbia,* 864 F. Supp. 2d 127, 133 (D.D.C. 2012), are inapplicable here.  Neither case involved the situation presented here, where Plaintiffs' state law claims were remanded to the Superior Court and were then dismissed by order of that court on August 13, 2015, thus nullifying the tolling of the limitation period during the pendency of the local court litigation.

3

First, upon remand to the Superior Court as to the state law claims, the federal claims *were dismissed* without prejudice.  *See* Dkt. No. 27 (entered on October 8, 2013).

Second, the Superior Court dismissed the state law claims long after the expiration of the applicable statute of limitations, *i.e.*, the dismissal occurred on August 13, 2015.

Each of the above-described circumstances is fatal to Plaintiffs' "relation back" argument.  The presence of the first circumstance is sufficient to dispose of the "relation back" contention because the combination of remand to the Superior Court of the state law claims and dismissal of the two remaining federal law claims left this action as of October 8, 2013 without an operative pending Complaint.  The First Amended Complaint filed on November 4, 2013, attached hereto as Exhibit C, did not change that reality as it was filed post dismissal without leave of this Court and never became operative.  The state law claims which Plaintiffs now seek to add via their proposed Second Amended Complaint ("Sec. Am. Complaint") can only relate back to the Complaint that is operative immediately prior to the filing of Plaintiffs' motion for leave to amend.  *See Halldorson v. Sandi Group,* 934 F. Supp. 2d 147, 157-58 (D.D.C. 2013).  Where, as here, the prior operative complaint was dismissed, the "new claim" cannot relate back within the meaning of Rule 15(c) because there are no existing federal claims for the new Sec. Am. Complaint to relate back to, and the Sec. Am. Complaint does not reinstate the original dismissed Complaint.  *Id.*

The second circumstance is no less compelling in terms of its dispositive effect.  For Plaintiffs' "relation back" theory to be meritorious, this Court would have to disregard entirely the principle that the severance of the state law claims from the remainder of this action had the effect of creating a separate parallel action.  *See Wultz v. Islamic Republic of Iran,* 762 F. Supp. 2d 18, 32-33 (D.D.C. 2004); *Disparte v. Corporate Executive Board,* 223 F.R.D. 7, 12 (D.D.C.

4

2004). The effect of this severance cannot be ignored, much as the Plaintiffs wish this Court to do. It is axiomatic that a severed action cannot simply be undone or nullified by the expedient of re-pleading the severed state law claims as part of the initial pre-severance action. The statute of limitations, its tolling and running, cannot be manipulated by the Plaintiffs in this fashion.

For these reasons, the state law claims are barred by the running of the statute of limitations.

### III.   THE PLAINTIFFS' FEDERAL CLAIMS ARE UNTIMELY

Plaintiffs profess to not understand how their "federal claims might be time barred as a result of their October 8, 2013 dismissal without prejudice." Plaintiffs' Memo, p. 36. They argue that their "takings claim fully ripened on August 13, 2015, when the Superior Court dismissed the Developers' state law claims without prejudice and effectively denied them just compensation." *Id.*

Plaintiffs' position on the timeliness of the takings claim is in effect a new tactic. At no time prior to the October 8, 2013 dismissal of their federal claims without prejudice did Plaintiffs assert this position. The credibility of this position is also severely undermined by the fact that the First Amended Complaint (Exhibit C) filed on November 4, 2013 contained the takings claim, as if it was already a ripe claim at that time. *See id.* ¶¶ 82-87. Plaintiffs did not inform this Court that their takings claim was unripe and subject to exhaustion. This failure is not without consequences, as it represents an effective acknowledgement that the takings claim was ripe long before August 13, 2015. *See Combined Counties Police Ass'n v. Fryzel,* No. 97 C 8205, 1998 WL 419490, at *6 (N.D. Ill. July 21, 1998).

Plaintiffs' reliance on the importance of *Ciralsky v. C.I.A.,* 355 F.3d 661 (D.C. Cir. 2004) is flawed for a number of reasons. First, *Ciralsky* does not stand for an "across the board" principle that following a dismissal without prejudice "a plaintiff may preserve the limitations

5

period that has otherwise run by 'advis[ing] the court in a timely fashion.'"  Plaintiffs' Memo, p. 37, quoting in part from *Ciralsky*, 355 F.3d at 673-74.  To the contrary, all that *Ciralsky* holds is that advising the trial court as to the running of the statute of limitations is one of a number of factors to consider in the exercise of the District Judge's discretionary decision under Fed. R. Civ. P. 59(e).  *See Ciralsky*, 355 F.3d at 674.  To the contrary, the DC Circuit stressed that in "remanding the case we are not dictating any particular result" and expressly noted the trial court's "wide discretion in this matter," and that the D.C. Circuit intended "nothing more than to offer the court the opportunity to reconsider its Rule 59(e) decision in light of a clearer understanding of the consequences of denial."  *Id.*  Finally, the bright-line rule of preservation urged by Plaintiffs is expressly not the law of this Circuit because of the following language in *Ciralsky*:

> "We thus leave the choice entirely in the hands of the district court, which may either choose to confirm the death kill of this action . . . or else allow the case to proceed."

*Id.* at 664 (internal quotation marks and citation omitted).

Plaintiffs' reliance on Chief Judge Roberts' April 1, 2004 decision upon remand to him is totally "off-base."  Plaintiffs' Memo misstates at footnote 12 that "[c]onsistent with that instruction [from the D.C. Circuit], Judge Roberts then reinstated Ciralsky's claims."  (Citing Dkt. No. 36 (D.D.C. April 1, 2004)).  A copy of the *Ciralsky* April 1, 2004 order is attached hereto as Exhibit D.  This order did not reinstate the claims.  Instead, it expressly deferred making any determination as to leave to amend, by affording the Plaintiff in that action "additional time to renew his motion for leave to amend the complaint, and shall identify with specificity all factional legal and other support for his motion."  Exhibit D.  Hence, the final sentence in Plaintiffs' Memo at footnote 12 misstates entirely what the April 1, 2004 order provided.

Plaintiffs' *Ciralsky*-related analysis is further tainted by its unjustified assertion of "a clear and explicit order from this Court tolling the statute of limitations for the Developers' federal claims." Plaintiffs' Memo, p. 37. The notion that this Court's October 28, 2013 Order ("Clarification Order") clearly and unambiguously tolled limitations as to the federal claims is nothing more than a self-serving assertion by the Plaintiffs.[3] It is entirely unwarranted to leap to such conclusion for the followings reasons:

First, the Clarification Order granted only in part the Plaintiffs' so-called Clarification Motion.

Second, this Court expressly rejected Plaintiffs' attempt to extract from this Court the comfort offered by a decision that the dismissal of the federal claims works no detriment to Plaintiffs' refiling or reassertion of such claims. *See* Clarification Order, fn. 1.

Third, Plaintiffs' position can draw no comfort from *Justice v. United States,* 6 F.3d 1474, 1479 (11th Cir. 1993). *Justice* dealt with an entirely separate issue, *i.e.,* whether equitable tolling is appropriate under the circumstances of that case to except a dismissal without prejudice from the rule that such dismissal "does not automatically toll the statute of limitations." *Id.* at 1479. Nor is Plaintiffs' position validated or supported by *Estate of Solis-Rivera v. United*

---

[3] Even assuming *arguendo* that equitable tolling is what the Plaintiffs sought via their Clarification Motion, the Clarification Order is a far cry from granting such extraordinary relief. First, the burden was on the Plaintiffs to show that such extraordinary equitable relief was warranted. *See Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 661 (11th Cir. 1993). Second, the determination of whether equitable tolling is warranted is very circumstance-specific. *See, e.g., Justice v. United States,* 6 F.3d 1474, 1479-83 (11th Cir. 1993). Had this Court intended to equitably toll the running of the statute of limitations upon dismissal of the federal claims, it would have, out of necessity, made findings of fact and reached conclusions of law as to the basis for such tolling. Moreover, where there exist "alternate ways of preserving his cause of action short of invoking the doctrine of equitable tolling" a plaintiff should not receive the benefit of such tolling. *See Justice,* 6 F.3d at 1480. Here, the Plaintiffs had several different avenues after the October 8, 2013 dismissal of the federal claims without prejudice. One avenue was to seek relief from said order by way of a motion to vacate pursuant to Fed. R. Civ. P. 60(b). *See, Justice,* 6 F.3d at 1481. Another avenue was to appeal from the involuntary dismissal ordered on October 8, 2013. *See id.* ("The right to appeal generally is regarded an adequate legal remedy which forecloses equitable relief."). Instead of availing themselves of these discrete legal avenues, Plaintiffs sought an amorphous clarification which falls fatally short of expressly seeking equitable tolling.

*States,* 993 F.2d 1 (1st Cir. 1993). This case held only that what was justified was a "remand to the same district judge to allow him to decide whether, given the surfacing of the statute of limitations problem, he wishes to give plaintiffs a further chance by allowing the present action to proceed." *Id.* at 3. The First Circuit did not mandate the granting of such leave to amend. Nor did it purport or attempt to hold that a mere proactive alerting of the court to the limitations issue compels an exception to the principle that dismissal without prejudice does not continue in effect the contingent tolling of limitations while the action was pending in federal court and prior to its dismissal. *See Ciralsky,* 355 F.3d at 672.

For all these reasons, Plaintiffs' federal claims are time-barred.

**IV.   THE SECOND AMENDED COMPLAINT FAILS TO STATE ANY CLAIM AGAINST NFPHC**

NFPHC's request for dismissal under Rule 12(b)(6) (NFPHC Memo, p. 31) is requested based on the fact that the proposed Sec. Am. Complaint fails to allege facts to overcome the rebuttable presumption that the District's allegedly wrongful conduct may not be legally imputed to NFPHC which is a separate *sui juris* legal instrumentality of the District. *See First Nat'l City Bank v. Banco Para El Comercio Exterism De Cuba,* 462 U.S. 611, 627-28 (1983) ("*BANCEC*"). In response to this contention, the Plaintiffs have confined themselves to stringing together a number of conclusory allegations in the proposed Sec. Am. Complaint where NFPHC is mentioned by name. Plaintiffs' Memo, pp. 40-41. Merely mentioning NFPHC's alleged role as a proverbial "secondary player" in a patently conclusory manner fails to satisfy the pleading standard(s) mandated by *Ashcroft v. Iqbal,* 566 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). There are several factors that support NFPHC's conclusion that the allegations as to NFPHC's role fail to pass muster under these Supreme Court mandated standards.

First and foremost, *Twombly's* plausibility standard cannot be satisfied by Plaintiffs' ritualistic incantation that "NFPHC was and remains complicit in the alleged conduct" because, as alleged in Paragraph 142 of the Sec. Am. Complaint, "the District and NFPHC acquired the [ ] Land unlawfully by conducting a fraudulent and procedurally invalid foreclosure action, while knowing that their action would deprive the Developers if their interests as the rightful owners of the [ ] Land." *Id.* This allegation, which attributes to NFPHC a role in conducting a pejoratively described foreclosure, cannot withstand the scrutiny called for under the plausibility standard. NFPHC was not in existence prior to July 7, 2010. Accordingly, it could not have participated in the decision made by the District to (i) declare the Promissory Note(s) secured by the Deed of Trust in default, (ii) serve the thirty (30) day notice to foreclose mandated by D.C. Code § 42-915(c), (iii) to set the terms and conditions of the Foreclosure sale and (iv) finally, or to deny approval of the Plaintiffs' request to have title to the Land transferred to UMC Development, LLC. Because of this impossibility and the resultant total implausibility of NFPHC having had any involvement in any of these decisions, the Plaintiffs are unable to and have not alleged any facts to support these conclusory allegations as to NFPHC. Sec. Am. Complaint ¶ 142. Nor does the proposed amendment furnish any plausible factual basis for the pure legal conclusion that the Plaintiffs were "the rightful owners of the Land." *See id.*; Plaintiffs' Memo, p. 42. The allegation of complicity between the District and NFPHC in Sec. Am. Complaint ¶ 109 is another example of an entirely unsupported conclusion. Nor are the allegations of wrongful occupation and mere "ownership and possession" supported by underlying allegations which would give rise to any duty owed by NFPHC to the Plaintiffs. In short, conclusory allegations about NFPHC are not a substitute for affirmative and specific factual allegations. This is no less true where, as here, Plaintiffs assert that as a result of a wrongful foreclosure, a cloud has been

created on their asserted property right(s). *See Diaby v. Bierman,* 795 F. Supp. 2d 108, 111-13 (D.D.C. 2011) ("Without more detail the Court cannot infer more than the mere possibility misconduct from the allegation that Defendant by its actions wrongfully created a cloud upon the title.") (internal quotation marks and citation omitted).

Finally, merely stringing together these unsupported allegations is also plainly insufficient to overcome the *BANCEC* presumption. To overcome it, a plaintiff would have to allege the existence of extensive day-to-day control by the District over the affairs of NFPHC or some compelling facts whose existence suffices to overcome the presumption because to do otherwise results in manifest "fraud or injustice," as in a situation where upholding corporate separateness "is interposed to defeat legislative policies." *BANCEC,* 462 U.S. at 629-30. *See also Oster v. Republic of South Africa,* 530 F. Supp. 2d 92, 97 (D.D.C. 2007). The Sec. Am. Complaint does neither. Therefore, it fails to adequately state any claims against NFPHC.

Date: November 17, 2015

Respectfully submitted,

POLSINELLI PC

/s/ Emil Hirsch
Emil Hirsch (DC Bar No. 930479)
Steven A. Pozefsky (DC Bar No. 477349)
1401 Eye Street, NW
Suite 800
Washington, DC 20005
Telephone: (202) 783-3300
Facsimile: (202) 783-3535
ehirsch@polsinelli.com
spozefsky@polsinelli.com

*Attorneys for Defendant Not-For-Profit Hospital Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November 2014 I served a copy of Defendant Not-For-Profit Hospital Corporation's Reply Memorandum In Support Of Its Cross-Motion To Dismiss Plaintiff's Second Amended Complaint on the following counsel of record via this Court's CM/ECF system:

>Derek L. Shaffer, Esq.
>QUINN EMANUEL URQUHART & SULLIVAN LLP
>777 6th Street, N.W., 11th Floor
>Washington, D.C. 20001
>derekshaffer@quinnemanuel.com
>
>Thomas L. Koger, Esq.
>Senior Assistant Attorney General
>441 Fourth Street, N.W.
>Suite 630 South
>Washington, D.C. 20001
>Thomas.koger@dc.gov

                                            /s/  Emil Hirsch
                                            Emil Hirsch